## Glenn *versus* Davis.

1. A judgment in foreign attachment has no other effect, than to authorize the sale of the attached property.

2. A foreign attachment, attaching the debtor's property but naming an agent as defendant, is not an election by the plaintiff to prevent his following the principal, even though the plaintiff knew of the agency at the time of issuing the writ.

3. When the alleged error is a specific sum, it may be remitted by the party in whose favor it is, and the judgment thus corrected, be affirmed.

ERROR to the Court of Common Pleas of *Greene county*.

The history of this case is the history of a small steamboat, known by the various names, "Leo," "Vixen," and "Bee." In 1848, it was sold by the sheriff of Monongalia county, Virginia, as the property of the Monongahela Iron Company, and bought by James V. Evans, for the trustee of Mrs. Ellicott, for $400; which was paid by the trustee, and the boat delivered to Jacob Baker, the agent of Mrs. Ellicott.

In the fall of 1848, and spring of 1849, the trustee had the boat overhauled, at an expense of $500. Baker ran her that season, and in September of the same year, on account of low water, laid her up in the mouth of Dunkard creek, in Greene county, Pa., and employed Bowers Davis, who lived close by—on the bank of the creek, and kept a small fishery—to take care of it. The boat remained thus laid up till the fall of 1850. On the 2d of December, Bowers Davis issued a foreign attachment against Jacob Baker, to No 28, February Term, 1851, in which he directed the sheriff to attach the boat in the hands of him, the plaintiff. On the 12th of February, 1851, Davis filed his bill against Jacob Baker, in which he claimed $500 for taking care of the boat, and on the next day filed the affidavit of his father-in-law, Robert Maple, that the claim of the plaintiff was true and correct, upon which the court decreed the sale of the boat. On the 4th of March, 1851, the court made an order for the sale of the boat, and on the 24th, the sheriff sold it to Bowers Davis, the plaintiff in that and this suit, for $83. Immediately after the purchase, Davis tore the boat to pieces, and sold the engine to his brother for $400, and the hull to other persons, for $50.

[Glenn *v.* Davis.]

On the 20th of February, 1852, John Glenn, trustee of Mrs. Ellicott, brought an action of trover and conversion against Bowers Davis, to No. 72, March Term, 1852, for the destruction and conversion of the boat. On the 30th of March, 1855, the cause was tried, and a verdict rendered for the plaintiff for $250, and on the 11th of August, 1855, judgment was entered thereon.

On the 31st of March 1855, Bowers Davis issued this foreign attachment against William Glenn, eldest son and executor of John Glenn, deceased, who was trustee of Mrs. Harvey M. Ellicott, to No. 19, June Term, 1855, in which he directs the sheriff to attach the defendant by the judgment, No. 72, March Term, 1852, aforesaid, due from himself to said trustee.

On the trial of this cause, the plaintiff read in evidence the testimony of Jacob Baker, and James V. Evans, to prove the agency of Baker. He also proved by his father-in-law, Robert Maple, and his son, Robert Davis, and perhaps others, that Baker was to pay him one dollar per day for taking care of the boat. Also that about $20 expenses had been incurred. He also proved what it was worth to take care of the boat. He also gave in evidence, an order from Jacob Baker to Hubbell for the boat, dated 18th of November, 1850. It, however, remained in his possession till broken up and sold by him.

The defendant on his part, proved by Jacob Baker and others, that at the time the boat was left in charge of Davis, Baker told him that he was but an agent, and that the boat belonged to Mrs. Ellicott. He also gave in evidence the records of the attachment, (*Davis* v. *Baker*, No. 28, February Term, 1851,) the declaration of which was in *assumpsit*, and the bill filed in same case for taking care of said boat; together with the declaration, the affidavit of Maple, the order to the sheriff to sell the boat, his return thereto, and proof that the same was sold to Bowers Davis for $83; also that immediately after the purchase, that Bowers Davis tore up the boat, and sold the engine for $400, and the hull for $50. The defendant also proved by several witnesses, that the boat, before it was broken up, was worth $1200, and that the engine itself was worth $800.

The plaintiff then rebutted, and proved that Baker had said that the boat belonged to him. He also gave in evidence the record of the attachment aforesaid, (*Glenn, Trustee, &c.,* v. *Davis*, No. 72, March Term, 1852,) in which there was a verdict for the plaintiff for $250. On the 7th of October, 1857, this case was tried, and a verdict rendered for the plaintiff for $371.75.

The points upon which the questions in the case arose, are fully stated in the opinion of the court.

[Glenn v. Davis.]

*Donnery* and *Rowe*, for plaintiff in error, cited *Thompson* v. *Davenport*, 9 Barn. & Cress. 78; 4 Taunt. 574; 15 East, 62; 10 Wend. 271; 2 Met. 319; Story on Agency, § 219; Ib. § 208; *Duvall* v. *Burbridge*, 6 W. & S. 529; *Wingate* v. *Bank*, 10 Barr, 106; *Clark* v. *Wheeling Bank*, 5 Harris, 322; 1 S. & R. 265; 4 Id. 249; Hill on Trustees, 558; 2 W. & S. 558; 10 W. 9; 7 W. & S. 367; 5 Barr, 516; 12 Id. 357; 1 Bouv. Inst. 314; 7 W. & S. 331.

*Black* and *Phelan*, for defendant in error, cited *Raimond* v. *Cowan and Eagle Mills*, 2 Met. 319; *Upton* v. *Gray*, 2 Greenleaf, Rep. 374; Smith, Lead. Cases, Am. Notes, 258; *Livingston* v. *Cox*, 8 W. & S. 62.

The opinion of the court was delivered March 4, 1859, by

THOMPSON, J.—Davis, the defendant in error, was employed in September, 1849, by Baker, to take the charge and care of the steamboat, out of which this controversy arose, for the stipulated sum of one dollar per day. He accordingly took and kept the charge and care of it, for something over a year. His care and custody being ended by an order from Baker, without payment, he issued a foreign attachment, and seized it to satisfy his claim. The writ was issued against Baker, as defendant, and the boat was attached in plaintiff's own hands. It was shortly thereafter sold by order of the court, and Davis became the purchaser, for $83. Judgment was recovered by plaintiff, in the attachment suit, for $500.

After this, Glenn, the plaintiff in error, brought suit against Davis, in trover, for the boat, claiming it as the property of Mrs. Ellicott, his *cestui que trust*, and recovered $250, the value of it.

Davis then brought this suit, by a writ of attachment, against Glenn, trustee, for the recovery of his claim for services, under the employment of Baker, and attached the judgment in his own hands, recovered by Glenn. The latter appeared to the action; and on trial, the plaintiff recovered for the services, $371.75.

It appeared in evidence, that after the purchase of the boat by Davis, he broke it up, and sold it in parcels, realizing, in fact, only some $50 or $60 for it.

On the trial of this issue, the defendant below, and plaintiff in error, gave in evidence the proceedings in attachment by *Davis* v. *Baker*, and requested the court to charge, "that if Davis became informed of the fact of the agency of Jacob Baker,—that John Glenn was the principal, before bringing the attachment to No. 28 of February Term, 1851,—that the bringing of said attachment, and prosecuting it to judgment, and sale of the property, is such an election as will prevent him from after-

[Glenn *v.* Davis.]

wards following the principal." The learned judge answered this point in the negative; and the answer constitutes the first assignment of error.

To succeed against the plaintiff below, in the action of trover, the defendant in this suit was obliged to set up the agency of Baker, in regard to the boat; and on this ground, and want of title to the boat, in Baker, as whose property it was seized and sold, he recovered its value against Davis. Thus was the latter defeated, in his attempted recovery for his services, and he brings this suit to enforce the contract of the agent against the acknowledged principal. From this perilous position, the principal seeks to escape, on the ground, that as the plaintiff below had proceeded by attachment against Baker, to recover his claim for services, it was an election to look to the agent for compensation for the services, and was a release of the principal. Was this seizure of the property, on the attachment *per se*, an election to look to the agent, and a release of the principal? This was just the point submitted, and answered in the negative, in the court below.

It will be recollected, that the attachment was simply a proceeding *in rem*. If it had been *in personam*, as was the case in *Jones* v. *The Ætna Ins. Co.*, 14 Conn. Rep. 502, with a full knowledge of the principal, it might have had the effect contended for; for it cannot be denied, that an agent may lay himself liable, not only by the manner of his contracting, but by the concealment of his principal at the time of contracting. But the judgment in an attachment, had no other effect than to authorize the sale of the attached property. It did not bind Baker further than this. No execution could issue on it, after the attached property was sold. It was fully and completely a proceeding looking to the property, as satisfaction, and not to Baker. As Baker never appeared to the suit, it could have no other operation. This being so, it seems to me, that *ex propria vigore*, the act of issuing the attachment was not an election to hold the agent, and release the principal, and that the court could answer in no other way than they did.

The plaintiff in error standing, then, as the acknowledged principal, and, in fact, estopped from denying it, after setting it up in the action of trover; and as the plaintiff has neither in fact nor in law, been compensated, or satisfied, or the defendant released, the liability of the latter remains, of course. As principal, he had received the services for which suit was brought through the contract of his agent, and is bound to pay for them. So far, there is no error in the record.

2. The answer of the court, complained of in the second assignment of error, was unexceptionable. .

3. The third assignment of error, is to the refusal of the court

to instruct the jury as requested, that the sum of $83, made on the plaintiff's attachment, was an extinguishment, or satisfaction of his claim, *pro tanto*. This sum having been returned as the amount made on the order of sale, must be treated as would a sale and return on an execution. In judicial sales, there is no warrant of title, and hence, it has been held, that the existence of the return of money made, is a satisfaction of the writ and judgment. This case is not distinguishable from, or exceptional to the principle stated. The cause of action is the same in this suit, as it was in the attachment. This the plaintiff does not, and could not deny. If, then, it was partly extinguished, under the process in the attachment, why shall not the extinguishment operate in this action? In fact, the proof shows, that the plaintiff actually received nearly the amount of his bid from the property. To permit him to recover in full for his services now, as the verdict must be taken to be, would be to allow him the $83 more than they were worth, as ascertained by the verdict. By applying the doctrine of extinguishment, this result will be corrected, and justice done between the parties. We think the court erred in not charging as requested on this point; but as the sum claimed to be in excess, is specific, it may be remitted, and as the defendant has expressed a willingness that this may be done, in case we should think it ought to be done, we will correct the judgment, by deducting it, and affirm the judgment less that amount.

The judgment of the Court of Common Pleas of Greene county is affirmed for $283.75, after deducting the sum of $83, as of the entry of the same, and as to the residue, the judgment is reversed.