THE INHABITANTS OF THE TOWNSHIP OF HOHOKUS, IN THE COUNTY OF BERGEN, v. ERIE RAILROAD COMPANY.

Argued June 5 and 6, 1900—Decided November 12, 1900.

1. Executors in selling land under a general power in a will may divide it into lots and lay out streets through it and thus create easements of a right of way in the several purchasers, if the estate will be benefited by such a disposition of the property.
2. Deeds made by executors under a power of sale in a will for lots with a description by boundaries on such streets, will create in purchasers an easement of the right to use the streets.
3. The provisions of the Orphans' Court act for the sale of lands of a decedent for the payment of his debts impose a duty upon the Orphans' Court to sell no more of the lands of the deceased than

is necessary for the payment of debts after the personal property is applied.

4. Comprised within the duty of the Orphans' Court in the premises is an obligation to have the lands so set up for sale as that they may be sold on the most advantageous terms, that no more of the lands of the deceased shall be sold than is necessary to provide a fund for the payment of debts.

5. The principle that justifies an executor in selling under a power contained in a will, in dividing the property into lots, laying streets through it, and creating easements of a right of way in the several purchasers, if the estate will be benefited by such a disposition of the property, applies equally to the Orphans' Court in the exercise of its discretion.

6. In making orders for the sale of lands of decedents for the payment of debts, the Orphans' Court exercises a jurisdiction which, though limited, is not special. Its orders and decrees upon all subjects within the scope of its jurisdiction are entitled to every presumption in favor of their regularity that the judgments of this court are entitled to, and infirmities in the proceedings of the Orphans' Court are not available in a collateral proceeding.

7. The Orphans' Court having jurisdiction to order the sale of lands of a testator for the payment of his debts, if there be irregularities or infirmities in the proceeding by which it exercises its jurisdiction, the order of sale might be set aside in a direct proceeding for review, but the conveyances made by the executor in pursuance of the order of sale cannot be called in question or set aside in a collateral proceeding, much less in favor of a party who has not title to the premises.

8. An acceptance by the public authorities of a dedication to public use is not essential to conclude the owner from the power of retraction where his intention to permanently abandon his property and dedicate it to public use is one unequivocally manifested. In that event, the right of the public to appropriate the lands to the public use at any future time when their wants or convenience require it, immediately attaches.

9. The local municipal government within the limits of which the dedicated lands lie, by virtue of its representing the public, may maintain actions to vindicate the public right of possession.

10. The township in this instance is the local municipal government which represents the public in this respect, and ejectment is the proper form of action to recover lands that they may be appropriating to public use.

---

In ejectment. On case certified from Bergen County Circuit Court.

Before DEPUE, CHIEF JUSTICE, and Justices GUMMERE, LUDLOW and FORT.

For the plaintiff, *J. Willard De Yoe.*

For the defendant, *Corbin & Corbin.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE.    The plaintiff brought an action of ejectment against the Erie Railroad Company for the recovery of the possession of a strip of land adjacent to its railroad, six hundred and fifty feet long and fifty feet wide for a part of its length, and twenty-five feet wide for the remainder, averring that the plaintiff's right to possession accrued January 1st, 1892. The defendant filed the statutory plea, defending for the entire tract.

Ezra Miller, deceased, on the 3d of April, 1880, became the owner of a tract of land called the "homestead farm," containing about three hundred and fifty-six acres. By his will, bearing date December 26th, 1883, admitted to probate July 21st, 1885, he appointed his son, Ezra W. Miller, and William Walter Phelps and Garret Ackerson, Jr., executors and trustees. He devised his homestead farm to the three trustees, and the survivor of them, their heirs and assigns, in trust, that they would rent and manage the same and collect the rents, income and profits thereof, and pay the taxes, repairs, insurance and all other expenses incident to the management of said farm, and divide the net proceeds thereof, from time to time, among his five children; and upon the further trust that the said trustees and the survivor of them after the death of his last surviving child, should sell and dispose of the said farm, &c., at public or private sale, in such portions and at such times as said trustees in their discretion might think proper, and pay one-fifth of the proceeds thereof to the lawful heirs of each one of his children.

On the 28th of March, 1891, Ezra W. Miller, sole acting executor and trustee under the will, made application to the Orphans' Court of Bergen county for an order for the sale of the testator's lands for the payment of debts. The Orphans' Court made the usual order to show cause, and upon the return thereof, June 3d, 1891, heard proof and made

an order directing the executor to sell, describing the lands to be sold as follows: *"First.* All that tract and parcel of land lying between the line of the Erie railroad and the Franklin turnpike, adjoining the lands of the Reformed Church, known as the parsonage, and containing seven and ninety-seven hundredths acres, and which said lands are divided into lots and blocks, as appears by a map produced herein; block A containing lots numbered 1 to 28 inclusive, and block B containing lots numbered 1 to 28 inclusive," &c. The strip of land in question is included in this parcel. The second tract was woodland, containing about two hundred acres, more or less.

On September 14th, 1891, the executor made a report wherein, after reciting advertisement, &c., he reported the sale at public auction of the following parcels: Lots 1 to 9, block A, to Gouverneur Price; lots 10 and 11, block A, to Sarah M. Hagerman; lots 12, 13 and 14, block A, to Gouverneur Price; also other lots. On December 30th, 1891, the Orphans' Court made a decree confirming said sales, and conveyances were made accordingly. Between June and August, 1898, the executor made applications to the court to sell at private sale, and made and reported sales of lots which were confirmed by said court; all said sales, being of lots shown on map filed in Bergen county clerk's office September 5th, 1891, entitled "Map of the property of the heirs of Ezra Miller, situated at Mahwah, N. J., surveyed by Richard Wanmaker, C. E. and Surveyor, July, 1891," having been made by direction of the executor, Ezra W. Miller.

The premises sued for are a part of a strip lying along the railroad and designated on the map "Street."

Six deeds were offered in evidence, made by the executor to purchasers of lots delineated on the map and by reference to the map. Of the lots conveyed, by reference to the map, ten fronted on the strip marked "Street" and were sold with reference to the map. Plaintiff proved that since the year 1898 the strip marked "Street" has been partly filled and graded level with the railroad tracks, and a switch laid down on some portion of it, occupying a width of about twelve feet

nearest to the railroad and a cattle-shute built twenty-four feet into said "Street," opposite lot No. 13, block A. Lot No. 13, block A, was a lot conveyed by the executor to Wanmaker, with a reference to the map.

At the trial the court directed the jury to find a verdict for the plaintiff, and directed the preparation of a case to be certified to the Supreme Court for its advisory opinion upon the following questions: (1) Has any title been shown in the township sufficient to sustain the action? (2) Has any acceptance by the township of the dedication suggested by plaintiffs been shown to have been made? (3) Has any lawful and sufficient dedication to public use been made of the property in question? (4) Had the executor any power to dedicate the property of his testator to public use as a street by the filing of the map above mentioned? (5) Had the Orphans' Court any power to authorize a dedication of the land to public use, and did that court's action in confirming sales made by the executor, by reference to said map, operate as a lawful dedication of the land in question to public use as a street? (6) Should the said verdict be set aside or sustained?

The case shows that a dedication of the street in question to public uses would undoubtedly have been made if the conveyances had been made by the owner of the fee. The cases on this subject are too numerous for citation. The single question for investigation is whether the sales made by the executor in this case were such as would effect a dedication.

The legal title at this time is either in the trustee or in the heirs of the testator who were the beneficiaries in his will. The Erie Railroad Company has obtained no title under any of these persons. Executors, in selling lands under a general power in the will, may divide it into lots and lay out streets through it and thus create easements of a right of way in the several purchasers, if the estate will be benefited by such a disposition of the property; and deeds made by them for lots, with a description by boundaries on such streets, will create an easement of the right to use the streets. *Earle* v. *New Brunswick,* 9 *Vroom* 47. By such con-

veyances the grantees are regarded as purchasers by implied covenant of the right to the use of the street, as a means of passage to and from their premises, as appurtenant to the premises granted; and it is upon the theory that the owner of the fee, by grants of rights of way in the street to his grantees, has parted with all beneficial ownership in the street, that the public authorities may take it for a public highway without any compensation to him. *Booraem* v. *North Hudson County Railroad Co.*, 13 *Stew. Eq.* 557, 564. Commissioners of partition, when directed to sell, have power to sell one part with an easement in another part annexed to it, and to sell the servient parcel subject to such servitude, if in their judgment such a course will be a benefit to the sale of the property. *Rosenkrans* v. *Snover*, 4 *C. E. Gr.* 420, 422. Where the owner of lands procures them to be laid off in blocks, streets and squares, and has a map made on which are delineated such streets and squares, which is filed among the public records of the county and by which he makes sales of lots, the streets and squares laid down on the map become dedicated to public use. *Methodist Episcopal Church* v. *Hoboken*, 4 *Vroom* 13. Where the map is not made by the grantor, but he makes conveyances by reference to a city map, in which the land is laid off in streets, avenues and alleys intersecting it, he thereby adopts the map by sales with reference thereto, and his acts will amount to a dedication of the streets, avenues and alleys to the public. *Clark* v. *City of Elizabeth*, 11 *Id.* 172. The right of the several grantees to streets and avenues laid down on the map by reference to which the conveyances were made does not depend upon the fact that the map was made by the grantor. Such a right arises by force of the deeds by which the lots are conveyed.

By the Orphans' Court act all lands, tenements and real estate of any person who shall die seized thereof are declared to be and to remain liable for the payment of his or her debts for one year after his or her decease, and may be sold by virtue of an order of the Orphans' Court of the county where such lands shall lie; if the order of the Orphans' Court

to sell be obtained within one year any alienation or encumbrance made or attempted to be made by his or her heir or heirs, devisee or devisees, to the contrary nothwithstanding. *Gen. Stat., p. 2370, § 70.* If the order be not obtained within one year, then the conveyance shall vest all the estate that the heirs or devisees are seized of at the time of the making of the order of sale. No time is limited by the statute within which an order for the sale is to be made. A discretion in that respect is confided to the Orphans' Court. *Liddel* v. *McVickar,* 6 *Halst.* 44, 57. The lien upon the lands for the payment of debts remains until a *bona fide* sale by the heir or devisee has actually been made. *Haston* v. *Castner,* 4 *Stew. Eq.* 697, 699; *Bockover* v. *Ayres,* 7 *C. E. Gr.* 13. No conveyance has been made by either the heir or devisee divesting himself of his interest at the time of the making of the order of the Orphans' Court. The title to the premises was at that time in the condition it was in at the time the testator died.

The statute provides that whenever an application is made by an executor or administrator for an order to sell lands for the payment of debts the court shall make an order directing all persons interested in such lands, &c., to appear and show cause why so much of the lands, &c., of the testator or intestate should not be sold as will be sufficient to pay his debts, or the residue thereof, as the case may require; that at the time and place mentioned in this order the court is required to examine the allegations and proofs of the executor or administrator, and other persons interested, and if, on full examination, the court shall find that the personal estate of the testator or intestate is not sufficient to pay the debts, the court shall order the executor or administrator to sell the whole, if necessary, of the lands, &c., of the testator or intestate, for the payment of his debts, or so much thereof as will be sufficient for that purpose; and when a part of the lands, &c., is sufficient, the court shall specify the part to be sold, and no more shall be sold than may be necessary to pay the residue of the debts after the personal estate is applied thereto. *Gen. Stat., p. 2371, §§ 71, 72.*

These legislative provisions impose a duty upon the Orphans' Court to sell no more of the lands of the deceased than is necessary for the payment of debts after the personal property is applied; and whatever order the Orphans' Court may make in the premises the executor or administrator must obey. Comprised within the duty of the Orphans' Court in the premises is the obligation to have the lands so set up for sale as that they may be sold on the most advantageous terms—that no more of the lands of the deceased shall be sold than is necessary to provide a fund for the payment of debts. The principle that justifies an executor, in selling under a power contained in the will, in dividing the property into lots, laying streets through it and creating easements of a right of way in the several purchasers, if the estate will be benefited by such a disposition of the property, applies equally to the Orphans' Court in the exercise of its discretion. Indeed, it would be difficult on any principle to give full scope to the statutory provisions which exact from the Orphans' Court the duty of seeing to it that no more of the lands of the deceased shall be sold than is necessary to pay the debts, unless a discretion is confided to the court of selling the lands in the most advantageous manner—in parcels or in lots, with streets and avenues laid out, if a sale in that manner will be most advantageous. In exercising its powers the court has a duty to heirs and devisees as well as to creditors, and an obligation to perform those duties in such a manner as will conserve the interests of both.

In addition to the power conferred on the Orphans' Court to order the sale, the executor is required to report the sale to the Orphans' Court, and the court is required to confirm the same as valid and effectual in law if it shall approve of such sale. The deed made by the executor or administrator is made by virtue of an order of the court. And the statute also provides that such deeds of conveyance shall vest in the purchaser or purchasers all the estate that the testator was seized of at the time of his death, if the order be obtained within one year thereafter, or all the estate the heirs and devisees were seized of at the time of the making of the

order, if it 'was not obtained within a year. In the present case the deeds made by the executor in compliance with the order of the Orphans' Court vested in the purchasers the title which the testator had at the time of his death. All the sales made by the executor were reported to the Orphans' Court and confirmed, and deeds of conveyance ordered.

The executor in making sales and conveyances conformed to the order of the Orphans' Court. If there were any infirmities in the proceedings of the Orphans' Court (for we are dealing with its orders and not with the acts of the executor), they could not be available in this collateral proceeding. The court had jurisdiction to make an order for the sale of lands for the payment of debts. This jurisdiction, though limited, is not special. The court does not exercise a mere delegated authority for special purposes. It is a regularly constituted tribunal·of justice, with broad and comprehensive powers. Its orders and decrees, upon all subjects within the scope of its jurisdiction, are entitled to every presumption in favor of their regularity that the judgments of this court are entitled to.. While they remain in force they are equally binding. *Hess* v. *Cole,* 3 *Zab.* 116, 121; *Den* v. *Hammel,* 3 *Harr.* 73; *Den* v. *O'Hanlon,* 1 *Zab.* 582; *Quidort's Administrator* v. *Pergeaux,* 3 *C. E. Gr.* 472; *Stokes* v. *Middleton,* 4 *Dutcher* 32, 36. In *Plume, Administrator,* v. *Howard Savings Institution,* 17 *Vroom* 211, it was held that a decree of the Orphans' Court granting letters of administration, founded on a petition and proofs, presenting a colorable case, of the decease of the alleged intestate and as to his residence, cannot be called in question 'in a collateral proceeding. In *Pittinger's Administrator* v. *Pittinger,* 2 *Gr.* 156, 167, it was held that a decree of the Orphans' Court ordering an administrator to sell the whole or so much of the lands of the intestate as will be sufficient to pay the debts will be reversed as erroneous and unlawful; but such decree cannot be impeached collaterally or treated as a nullity. To the same effect is the opinion of Mr. Justice Elmer in *Runyon* v. *Newark India Rubber Co.,* 4 *Zab.* 467, 476.

The Orphans' Court having jurisdiction to order the sale

of lands of the testator for the payment of his debts, if there be irregularities or infirmities in the proceeding by which it exercised its jurisdiction, the order of sale might be set aside in a direct proceeding for review, but the con· veyances made by the executor in pursuance of the order of sale cannot be called in question or set aside in a collateral proceeding, much less in favor of a party who has no legal title to the premises. By force of those deeds the several purchasers acquired by implied covenant the right to the use of the street as appurtenant to the lands conveyed to them, and the street became dedicated to public use. An acceptance by the public authorities is not essential to conclude the owners from the power of retraction, when his intention to permanently abandon his property and dedicate it to public uses is once unequivocally manifested. In that event the right of the public to appropriate the lands to the public use, at any future time when their wants or convenience require it, immediately attaches. *Trustees of M. E. Church* v. *Hoboken,* 4 *Vroom* 13, 14; *Den* v. *Dummer, Spenc.* 86 ; *Mayor of Jersey City* v. *Morris Canal and Banking Co.,* 1 *Beas.* 547. The local municipal government within the limits of which the dedicated lands lie, by virtue of their representing the public, may maintain actions to vindicate the public right of possession. *Price* v. *Inhabitants of Plainfield,* 11 *Vroom* 608; *Hoboken Land and Improvement Co.* v. *Hoboken,* 7 *Id.* 540.

The township in this instance is the local municipal government which represents the public in this respect, and ejectment is the proper form of action to recover the lands, that they may be appropriated to public use. In both respects this action was properly brought. *Dummer* v. *Jersey City, Spenc.* 86 ; *Methodist Episcopal Church* v. *Hoboken, supra; Price* v. *Plainfield, supra; Ocean Grove* v. *Berthall,* 34 *Vroom* 312. Bringing an action of ejectment is plenary evidence of an acceptance by the public authorities of a dedicated street.

To each of the first three questions certified we return an affirmative answer. The inquiry propounded by the fourth question certified is immaterial. The act of dedication in

this instance arises upon the making of deeds of conveyance in pursuance of the order of the Orphans' Court. To the fifth question we return an affirmative answer.

The direction of the verdict by the learned judge was upon a question of law, and the verdict in compliance therewith should be sustained.