MARY F. GULICK

v.

WILLIAM GULICK.

A husband conveyed lands to his wife, to hold in trust (evidenced by deed) for his benefit during his lifetime, and thereafter to sell the lands and divide the proceeds among his widow, should she survive him, and their children or grandchildren.—*Held*, that the husband and wife could not substitute for the trust as to those lands another trust, so as to affect the interests of the children and grandchildren.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. J. F. Hageman, Jr.*, and *Mr. J. F. Hageman, Sr.*, for complainant.

*Mr. G. O. Vanderbilt* and *Mr. J. H. Stewart*, for defendant.

THE CHANCELLOR.

This suit is brought by a wife against her husband, to obtain relief from the consequences of his failure to discharge his obligations as life-tenant of a farm of one hundred and forty acres, near Princeton, the legal title to which she holds. The tenancy was created, as she alleges, under a declaration of trust set out in the bill and executed by her. She seeks also, by this suit, to compel him to furnish her a proper support; she alleging that he has not only not provided proper maintenance for her but

has absented himself from his home, and left her without money and without the necessaries of life. The defendant, by his answer, denies that the declaration of trust set out in the bill is the true one, but alleges that it was substituted for the true declaration by fraud upon him, and he sets forth the instrument, which he says is the true one, for which it was substituted, and prays (answering on that head by way of cross-bill) that it may be established as the declaration of trust executed by the complainant concerning the farm. He also says that he has provided for the complainant support from April, 1883, according to her own proposition in that behalf, and that after furnishing that support he has not had the means to pay the interest upon the mortgage (of $8,000,) upon the property, in consequence whereof suit for foreclosure has been instituted.

The facts in regard to the declaration of trust are as follows: The defendant, in June, 1878, was the owner of the farm. He then desired to transfer the title to his wife, the complainant. One of the reasons which he gave for so doing was, that he wanted to secure her for money which she had brought to him on or after their marriage (which took place in 1846), and another was his determination to put the property out of the reach of a certain creditor or creditors of his. An arrangement was made between him and the complainant that he should convey the property to their son-in-law, Charles H. Olden, who should then convey it to her, to be held on certain trusts agreed upon between the complainant and defendant; and that she should thereupon execute a declaration of those trusts. The deeds of conveyance and declaration were drawn accordingly, and the deed from the defendant to Olden and the declaration of trust were executed at or about the same time. They are both dated June 17th, 1878, and the deed appears to have been acknowledged on that day, but the declaration was not acknowledged until two days later. The execution of the conveyance from Olden to the complainant was delayed for some reason (perhaps his absence or illness), so that the deed was not signed by him until the 26th of July following. Afterwards the defendant discovered that in the declaration of trust the date of that

conveyance was erroneously stated to be the 17th of June, instead of the 26th of July, and he was desirous of having it corrected. At his request the complainant applied to the lawyer by whom the declaration was drawn, and requested him to make the requisite alteration, but he declined to do so, and recommended that a new one be drawn. Before another was drawn, the complainant, being about to leave home temporarily, hid the declaration and the deed from Olden, under the carpet, in one of the rooms of their house, and when it was wanted for the purpose of drawing a new one she had forgotten what she had done with it, and it therefore could not be produced. In the fall of 1878, the defendant, being about to leave this state to go West with their son, who was ill, called upon the lawyer, and requested him to draw a new declaration in place of that which was lost; the new one to be precisely like the other. The complainant declined to sign a new one exactly like the original, but insisted on a change in respect to what she was under the trust to receive from the property in case she should survive the defendant. The trust declared in the original instrument was that she would hold the farm in trust; first, for the use and benefit of the defendant during his life, subject to the conditions thereinafter expressed; second, upon his death to sell it, and divide the net proceeds as follows : one-third to be retained by her, and the other two-thirds to be equally divided among their children (the children of any deceased child to take the parent's share), but in case any of the children should have received an advance from the defendant of any portion of his estate, or should be indebted to him, the advance or indebtedness should be deducted from such child's share; third, in case the complainant should predecease the defendant, the use, interest and profits of the farm should enure to the defendant for his life or until he should remarry; and in case of his remarriage, he should have one-third of the use, benefits and profits, and the children the other two-thirds, and at his death the children should receive the whole farm in fee; fourth, in case the complainant should survive the defendant, and should marry again, she should be entitled to only the one-third of the use or proceeds of the farm for life,

and at her death that third should go to the children in fee ; and fifth, to sell or exchange the farm for other property in the joint lives of the complainant and defendant, as they might agree. The instrument declared, also, that in order to carry out the trusts the complainant should be at liberty to provide by her last will and testament for the execution of any of them that should be unexecuted, and like power was given to the defendant should he survive her. The second or new instrument declared that the complainant held, and would continue to hold, the farm in trust for the benefit of the defendant, who should be at liberty to occupy it for his lifetime or until sale as thereinafter mentioned, for the maintenance of his family, and to receive the rents, issues and profits thereof, but must pay the taxes and keep the property in good repair ; and that at his death the complainant should sell it (unless she, with a majority of the children, should agree in writing that the sale should be postponed, and in such case she and such of the children as should be without homes might remain in the occupancy of the farm until it should be sold), and when the farm should be sold and any mortgage debt subsisting as a lien thereon should have been paid, she should set apart from the proceeds of the sale $6,000 for her own use for her life or widowhood, to be disposed of as she should see fit, in case she should not marry again ; but that in case of her marriage she should receive only the annual interest or income of that sum, and at her death the principal should be equally divided among their children, and that the balance remaining from the sale of the farm should be divided among the children equally, deducting from their respective shares the amount of any advancement which they should have received from their father in his lifetime or from her, in case she should see fit to enforce such deduction ; and that if she should die before the defendant, the title to the farm should vest absolutely in him, for life, and in the children after his decease ; but that he should have power, with the consent of a majority of the children, to sell the farm and receive the interest of the money arising from the sale for life, and that at his death the principal should go to the children. The instrument contained a provision that

Gulick v. Gulick.

nothing therein contained should prevent the defendant from re-voking it and causing it to be canceled of record at his will, or to prevent the complainant and defendant from selling, mort-gaging or conveying the farm, in case they should deem it best and desirable for them to do so.

The two instruments differ principally in this : that the first provides that the complainant shall, in case she survives the defendant, have one-third of the net proceeds of the sale of the property, while the other provides that in that case she shall have $6,000. The first provides that in case the defendant sur-vives the complainant and marries again, he shall have only one-third of the use of the property, the rest to go to the children. The other contains no such provision, but gives the defendant the whole of the use for life. The second contains a power to mortgage the farm, and also a power of revocation on the part of the defendant. The first contains neither. The evidence shows clearly that the complainant took advantage of the error in the first declaration, the loss of that instrument and the de-fendant's desire to have another in its place, to obtain a more satisfactory (and, as she thought, more just) arrangement—to compel him to consent to a change in the provisions of the in-strument in her favor, and she thus constrained him, in order to get any declaration of trust at all, to agree, that at his death, in case she should survive him, she should have $6,000 out of the proceeds of sale of the farm instead of one-third of those pro-ceeds (the provision in the first instrument), which might be less than that sum. Though he denies that he agreed to the change, I am satisfied from the evidence that he did so in fact, though with much reluctance. The provision for mortgaging the farm, as well as that for the revocation of the trust by the defendant (not to speak of the other change against the in-terest of the children), might be destructive of all the interests of the children under the trust. Indeed, the defendant, under the power of the revocation, has, though protesting that the second declaration had no validity, revoked the trust under that instrument; and so, if the second declaration be, as the complainant insists it is, the true and only declaration, the

trust is wholly at an end, and the title to the farm is vested in her free from the trust. The defendant, however, by his answer by way of cross-bill, seeks to set up the first declaration as the true one. After the second one had been executed, the complainant found the first where she had concealed it for safety, as before mentioned. She cut off a piece containing her signature and seal, and putting it with the rest of the document, in an envelope, handed them to the lawyer by whom the declaration was drawn. He attached the piece to the instrument again, and laid the paper away in his office for reference, if necessary, as constituting part of the history of the transaction. The defendant having returned from the West, called on the lawyer at his office, to ascertain whether the second declaration (which he had with him) was like the first. The lawyer then produced the first, and after some conversation, including the reading of it over to the defendant, the defendant asked to see it. It was handed to him accordingly. He asked permission to take it, but was refused. Without leave, and without the knowledge of the lawyer, he took it away with him, however, leaving the second declaration on the table. The lawyer supposing that the paper which was left on the table was the first declaration, put it away accordingly, and did not ascertain that the defendant had made the exchange until the first was brought to him by the complainant, who had taken it from the post-office in Princeton, where it had come from Trenton in an envelope, addressed to the defendant, who had taken it to the county clerk's office, and had it recorded. After it was taken from the lawyer's office by the defendant, and before it was recorded, the word "June" in the statement in it of the dates of the deeds, in its own date, and in the date of the certificate of acknowledgment upon it, was altered, by some one, to "July."

The important question is whether the second instrument ever had any validity whatever. As before stated, it is now revoked. If the first declaration was a valid instrument, and was intended to operate, it was beyond the power of the complainant and defendant to alter it. They, of course, could, by agreement between them, make any alteration in its terms, so far as their own in-

Gulick *v.* Gulick.

terests under it were concerned, but they could not affect the rights which their children (and perhaps grandchildren) had acquired under it. The instrument purported to have been sealed and delivered, and the complainant acknowledged that she had signed, sealed and delivered it as her voluntary act and deed, for the uses and purposes therein expressed. Had it not been that it was thought that it would be ineffectual because of the misstatement which it contained, of the date of the deed to the complainant, and its being itself dated and acknowledged after the date of that deed, there would, probably, have been no other. The defendant sought merely to have the dates altered, so as to correct those errors. Finding, as he thought, that that was impracticable, he sought to have a new one, indeed, but the new one was, in its terms, to be just like it—merely a reproduction of it. And the new one would have been so, had it not been that the complainant, the declaration then being lost, as she said, refused to sign such new one, or to sign any unless the terms were made more favorable for her. The parties were in error, in supposing that the first declaration was rendered invalid by the misstatement therein of the date of the deed from Olden to the complainant, or by the fact that that deed had not been executed when the declaration of trust was signed, or by the fact that the date of the latter was prior to that of the former. The declaration could have been rectified in equity, if necessary, and it could have been enforced without rectification. The instrument being a valid declaration of the trust, it was not in the power of the complainant and defendant, by their own consent alone, to revoke or alter it to the prejudice of the other *cestuis que trust.* The children had acquired rights under it, of which the complainant and defendant could not deprive them, by revoking or altering the instrument. The grandchildren had also acquired contingent rights under it. If a voluntary trust, in which the settlor has reserved no power of revocation, is once perfectly created, and the relation of trustee and *cestui que trust* is once established, it will be enforced, though the settlor has destroyed the deed, or has attempted to revoke it by making a second voluntary settlement of the same property, or if the estate,

by some accident, becomes revested in the settlor. In all these cases, the first perfectly created trust will be upheld with all its consequences, and the settlor will be declared to be a trustee. Nor is notice to the *cestui que trust,* or to the trustee, and acceptance by him, essential to the validity of a voluntary trust, if it is otherwise perfectly created. *Perry on Trusts* §§ *104, 105; Isham* v. *D., L. & W. R. R. Co., 3 Stock. 227; 2 Spence's Eq. Jur. 881, 882.*

The first declaration of trust is therefore still in force, and it will be so decreed. As equitable life-tenant, the defendant was bound to keep down the interest on the mortgage upon the farm, if the rents and profits were sufficient for the purpose. They were, I am satisfied, enough to enable him to do that, and pay the taxes and keep the premises in good repair. By his refusal to discharge this duty, he has brought about a foreclosure suit upon the mortgage under the execution issued on the decree, in which the property has been advertised to be sold by the sheriff, and it would have been sold before this time had not this court ordered a postponement, to give time to decide this cause. There will be a receiver appointed to take charge of the property, and apply the rents and profits, so far as necessary, to the payment of the interest on the mortgage and the costs of the foreclosure, if by such means the sale can be prevented and the property saved. If not, it will be ordered that the surplus money from the sale be brought into court, to be disposed of as equity may require.

The complainant seeks, by the bill, to compel the defendant to provide her with proper support and maintenance. The bill alleges that he not only has refused to provide a proper maintenance for her, but has left her without the necessaries of life.

This court has jurisdiction, by statute, to decree alimony where a husband abandons or separates himself from his wife without justifiable cause, and refuses or neglects to provide for and maintain her suitably. The allegations of the complainant that the defendant has so separated himself from and abandoned her, and has not made suitable provision for her support, are sustained by the proof. Indeed, the answer does not

American Dock and Improvement Co. *v.* Trustees of Public Schools.

deny the charge. The reason there given by the defendant for separating himself from her, is not justifiable cause. The defendant should be compelled, by the decree of this court, to provide for her a suitable support. What it shall be will be the subject of a reference. There will be a decree in accordance with the views expressed in this decision.

The defendant will be required to pay the costs of this suit, and also a suitable counsel fee for that part of the litigation which has reference to the alimony.