New Jersey Title Guarantee and Trust Company, complainant,

*v.*

Richard Fay Parker, executor, &c., et al., defendants-respondents, and Katherine F. Junkin, defendant-appellant.

[Argued June, 1915. Decided November, 1915.]

1. Appellant, who married the testator under an oral antenuptial agreement that she should receive one-third of the income from securities during the testator's life and the whole of the securities at his death, divorced the testator within ten years after marriage. The antenuptial agreement, which was validated by subsequent written instrument, reciting that appellant should receive the securities in case she kept her promise to become testator's wife, was made in the State of New York, where the marriage was celebrated.—*Held*, that appellant was not entitled to the securities merely upon celebrating a marriage with the testator, but was bound to remain his wife unless justified in divorcing him under the laws of New York, and, where she procured a divorce in a foreign state on a ground not authorized by the laws of New York, she was not entitled to the securities.

2. In such case, where the laws of New York recognized only one ground for absolute divorce, while the State of Missouri, in which appellant secured a divorce, recognized numerous grounds, there is no presumption that appellant secured her divorce on the sole ground recognized in the State of New York.

3. The law of the state where the antenuptial agreement was made and the marriage was celebrated will govern the rights of the parties.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell, whose opinion is reported in *84 N. J. Eq. 351.*

*Mr. J. Boyce Smith, Jr., Mr. William R. Oglesby* and *Mr. Arthur S. Barnes* (of the New York bar), counsel on the brief, for the appellant.

*Messrs. Hartshorne, Insley & Leake,* for the respondents.

The opinion of the court was delivered by

KALISCH, J.

The New Jersey Title Guarantee and Trust Company, as complainant, filed a bill of interpleader in the court of chancery for the purpose of having determined whether Richard Fay Parker, the executor of Henry M. Parker, deceased, or Katherine F. Junkin, was entitled to receive from the complainant certain securities which had been deposited by the decedent during his lifetime with the complainant. The bill set out that under the will of Henry M. Parker, Catherine Fay Parker, Elizabeth Parker and Rose Parker, infant children of Henry M. Parker, the executor, were legatees. The defendants were ordered to interplead. The infant defendants, by their guardian *ad litem,* the executor, and Katherine F. Junkin, answered the bill.

After a final hearing of the cause, Vice-Chancellor Howell advised a decree in favor of the executor and the infant children and against Mrs. Junkin. From this decree Mrs. Junkin has taken an appeal to this court.

On the 17th day of June, 1903, Katherine Bailey (now Junkin) married Henry Parker, since deceased, in New York, where both were domiciled. A few days before their marriage, at the place of their domicile, they entered into a verbal agreement, by the terms of which the prospective husband agreed that one-third of the income of the securities deposited with the trust company should go to his wife after their marriage, and that at his death the entire lot of securities should go to her.

This verbal agreement was, subsequently, in 1909, as hereafter stated, reduced to writing by Mr. Parker, and was subscribed by him, and under the decisions of the State of New York, it appears that the legal effect of the writing was to take such verbal agreement out of the operation of the statute of frauds and to

vitalize it. *Ward* v. *Hasbrouck et al., 44 App. Div. 32; 60 N. Y. Supp. 391, 393; Helios Upton Co.* v. *Thomas, 96 N. Y. App. Div. 401; affirmed, 184 N. Y. 585; Young* v. *Ingalsbe, 208 N. Y. 503.*

On the 4th day of June, 1903, the intended husband made a deed irrevocable in its terms of. the securities to the complainant trust company, which deed was acknowledged June 11th, 1903, and which provided by the third clause thereof, that upon his death the securities deposited in trust with the trust company shall be paid over and distributed by the trust company as he shall by his last will and testament provide, and, in the event that he shall die intestate, to distribute the trust fund created by him among such persons as would be entitled to receive the same under the intestate laws of the State of New York, and he had died intestate and a citizen and a resident of that state.

At the time when he left the trust deed with the trust company he verbally directed the company, and which direction, in 1905, was confirmed by him, in writing, to pay one-third of the income of the securities to his prospective wife, which the company did until his death, which took place on the 14th day of March, 1914.

Before marriage the intended husband showed to his prospective wife his will, leaving his entire estate to her, and Mrs. Junkin admits that at that time she had knowledge of the trust deed and its contents.

In 1909, the testator, his wife and her mother were living in Florence, Italy. His wife left him and came to the United States. Shortly after her arrival in this country she had the instrument prepared, embodying the terms of the verbal antenuptial agreement, and sent it to her mother to get it executed by him. He did execute it, and his wife, after having received it back from her mother, continued to absent herself from him, and, in 1912, obtained a divorce in the State of Missouri. In March, 1913, she married her present husband, Mr. Junkin. After the divorce was obtained the testator made a will on the 12th of February, 1913, by which he left all his estate to his brother Richard as executor for the benefit of his, Richard's, children.

Mrs. Junkin claimed the securities by virtue of the verbal ante-
nuptial agreement confirmed by the testator's writing of 1909,
and the will made in her favor by the testator before her marriage
to him.   The executor relied on the last will of the testator, but
failed to set up explicitly the New York statute of frauds.

Vice-Chancellor Howell held that the testator by the trust
deed made by him in 1903 parted with all control of the prop-
erty, and thought that this was decisive of the rights of the par-
ties claimants, since under the trust deed the testator was free
to make as many wills as he chose, and the last would control.
While we agree with the views of the learned vice-chancellor in
his construction of the trust deed and its legal effect, it is not
decisive of the question involved.

The real question is, Was there a valid contract to make a will
in Mrs. Junkin's favor?

For, if there was such a valid contract by reason of the effect
given to the instrument executed by the testator in 1909, then
equity will enforce it, unless it appears that Mrs. Junkin has by
some act of her own committed a substantial breach of it which
in law would disentitle her to enforce it.

For the purposes of this case we may proceed upon the assump-
tion that the antenuptial agreement is valid, by reason of the
subsequent writing reciting the terms of it under the laws of
the State of New York, the place where it was made, neverthe-
less, we cannot close our eyes to the important fact that the
fundamental consideration of the contract, in so far as Mrs.
Junkin is concerned, is that she will be a wife to her intended
husband so long as he does nothing which will entitle her to
separate from him under the law of the state in which they were
residents at the time the contract was made, and where the
marriage took place, provided they continued to be residents of
such state.   If she cuts asunder the marriage bond for a reason
not recognized by the laws of New York, then, according to
equitable principles founded in good morals and common sense,
she ought not to be permitted to claim any benefit from his estate
which was expressly intended to come to her as widow after his
death.

The appellant seeks to have the antenuptial contract treated as if it were transformed into a unilateral undertaking by the husband immediately after the marriage ceremony was performed.

The argument made by the appellant is that, so far as Mrs. Junkin was concerned, she performed her part of the contract when she married the testator, and, upon the happening of that event, she became entitled to the benefit of the contractual provisions in her favor. Carrying out this proposition to its logical sequence, it amounts to this: That as soon as the marriage ceremony was performed, Mrs. Junkin became in law the wife of Mr. Parker, the testator, and therefore had the option to turn away from him the next moment thereafter and refuse to live with him, for, according to her theory, the insistence is that by marrying Mr. Parker she had fully performed her undertaking—her marriage to him being the basis and consideration for her intended husband's undertaking, and, therefore, he was irrevocably bound to carry out the provisions of the antenuptial contract.

But a plain reading of the contract forbids any such construction of it. The husband did not settle absolutely his property on his wife. The settlement he made was a conditional one. A situation is therefore presented here different from the case where the provisions of the marriage settlement have been fully executed. By the terms of the contract Katherine Bailey was to become Henry M. Parker's wife, not for so long a time as it pleased her to remain his wife, but during the term of her natural life, unless he predeceased her. This is made clear by the language employed in the contract, and which is as follows:

"Two-thirds of the income thereof to be paid to me during the term of my *natural life,* and one-third of said income *during such period* to said Katherine F. Bailey in event that she should keep her promise to become my wife."

Bearing in mind that the marriage of Mrs. Junkin to Mr. Parker was only a part performance by her of her obligation under the antenuptial agreement, and that the marriage itself imported reciprocal duties on part of the husband and wife, at least, to this extent, that she should remain his wife, the burden

36

was cast upon her to show that the separation from him and dissolution of the marriage whereby she ceased to be his wife was due to his conduct.

For the undertaking of the husband by which she was to receive the benefits mentioned in the antenuptial agreement, read in the light of its natural meaning, was, as has already been pointed out, not only that she should become his wife, but that she should remain such, and, in case of his death, take as his widow. This brings us to a consideration of her testimony relevant to this topic. She testified that she left her husband in 1909; that she obtained a divorce from him in the State of Missouri, where she had never lived with her husband, in 1912. No record of the divorce was produced and her testimony on that point appears to have been objected to. There was no competent proof that she had obtained a divorce from Mr. Parker. But taking it for granted that she had, it nowhere appears 'in the record that it was obtained by her upon a ground recognized as a valid ground for divorce in the State of New York, where the antenuptial contract was made, or the state of which husband and wife were residents at the time.

Under the laws of the State of New York, adultery is the only matrimonial offence for which an absolute divorce may be obtained by the party offended against. Under the laws of the State of Missouri, where the appellant obtained her divorce, there are eleven statutory grounds for absolute divorce, among which are: adultery; desertion for one year; indignities rendering condition intolerable; habitual drunkenness for one year; husband becoming a vagrant; cruelty, &c.

Upon the argument it was urged by the appellant that it was to be presumed that the divorce was obtained on a ground recognized by the laws of the State of New York as a valid one in that state. But this, apparently, cannot be so. For, as has already been pointed out, there are in the State of Missouri various grounds for absolute divorce, and therefore there is no substantial reason why there should be any presumption that it was for adultery rather than for desertion, vagrancy or for any of the other grounds mentioned by the Missouri statute.

We think the general legal rules governing contracts are applicable to the facts of the present case, and therefore will be applied. It is a universally recognized legal doctrine that in the absence of anything appearing in the contract to the contrary, the parties to it will be presumed to have contracted in reference to the law of the place where the contract was made.

The antenuptial agreement having been made in New York, and the marriage having taken place where the rights and obligations arising out of these contracts, in that jurisdiction, must be held to have been within the contemplation of the parties, it follows, therefore, as a corollary, that the parties contemplated that their marriage relation should continue until legally dissolved for some cause recognized as a valid ground for its dissolution by the laws of the State of New York or some other jurisdiction selected by them as their place of residence.

Therefore, when it appeared by the testimony of Mrs. Junkin, without any further explanation that she left her husband in 1909 and obtained a divorce from him in 1912, and married her present husband, Mr. Junkin, in 1913, it was incumbent upon her to show, in order to entitle her to the benefit of the provisions of the antenuptial agreement, that she had in good faith performed her part of the marital obligations arising out of the marriage or was prevented from so doing by the testator's act. From the record, as it appears before us, Mrs. Junkin failed to perform her part of the antenuptial agreement, which was a condition precedent to her being entitled to have the testator make a last will of all his estate in her favor. For this reason the decree will be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR—15.

*For reversal*—None.