## BOYD v. UNITED STATES.

District Court, D. Connecticut. August 9, 1929.

Meyer, Hincks & Traurig, of Waterbury, Conn., for plaintiff.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Wm. T. Sabine, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C.

BURROWS, District Judge. This action is brought by George E. Boyd, as trustee under the trust settlement of Edward L. Clark, deceased, against the United States, to recover the sum of $7,047.31, collected as a federal estate tax from the estate of Edward L. Clark, with interest from May 24, 1926. Edward L. Clark died a resident of Mt. Vernon, N. Y., on May 12, 1924.

On June 20, 1879, said Clark executed an instrument in the nature of a trust settlement, voluntary and with a nominal consideration, with one Smith as trustee, conveying all property, real and personal, owned by him. In this trust agreement of 1879 there was no power reserved to amend or revoke the same. Among other provisions it contained, in effect, the following: To pay the annual net income of the trust fund in quarterly payments to Edward L. Clark during his life, and on Edward L. Clark's death to distribute the corpus to his heirs at law, according to the laws of Connecticut, subject to his mother's rights therein. In October, 1910, the court of probate appointed the plaintiff as successor trustee.

On December 18, 1915, the settlor, Edward L. Clark, made a further agreement with the plaintiff, as trustee, purporting to change the provisions of the agreement of 1879, reciting that the trust estate has greatly increased in value, and that the trustee should pay to the settlor during his life the sum of $3,600 annually, in lieu of the entire income, and that the excess income be added to the principal, and providing further that, "should the net income during any year fall below said sum of $3,600, then and in that event so much of the principal shall be taken as may be necessary to make up said sum of $3,600." This agreement ratifies the trust agreement of June 20, 1879, "except as herein altered."

On July 23, 1918, the settlor made a further agreement with the trustee, reciting a further increase in the trust estate and the increased cost of living, the expenses of the settlor, and providing that the trustee pay to the settlor the sum of $4,800 each year, making up a deficiency, if necessary, in the $4,800 out of principal, and adding any surplus income above $4,800 to the principal.

On May 1, 1920, the settlor and the trustee entered into another agreement, wherein the trustee was to pay to the settlor "from the net income of said trust estate the sum of $3,600 per year and no more." A further clause in this agreement provided that the trustee pay from the net income fixed sums to certain of his children, or, in the event of the death of any such child or children, to their children, the grandchildren of the settlor, and that such payments be treated as advancements, and that any income additional, after such payments, should be added to the principal. Concurrently with the last agreement, the children of the settlor, as his presumptive heirs, made an agreement with the trustee only, agreeing to hold him harmless for any payments made under such provisions. From this point, no further agreements or modifications were made, and Boyd administered the estate until the death of the settlor in 1924. After the death of the decedent, the Commissioner of Internal Revenue determined that the value of the property held under the trust agreement and transferred to the children by the trustee should be included in the decedent's gross estate and be taxed under section 402(c) of the Revenue Act of 1921 (42 Stat. 278). The Commissioner therefore determined the value of the trust estate as $349,856.04, and assessed a federal estate tax against the plaintiff in the sum of $7,047.31. Thereafter the defendant collected the sum so assessed from the plaintiff, under protest.

The plaintiff filed a claim for refund, which was rejected. To this action for a recovery of the tax, the defendant demurs on the ground that the trust was intended to take effect in possession or enjoyment at or after the decedent's death, within the meaning of section 402(c) of the Revenue Act of 1921, and further that the decedent reserved to himself the income or part thereof during his lifetime, and further reserved to himself the power to alter and amend the trust instrument and to revoke the power of the trust until his death. There is no claim that the transfer was made in contemplation of death, or with the purpose to evade the tax.

■■ The original trust agreement was undoubtedly void because of the statute of perpetuities of Connecticut, in effect at that time, as follows: "No estate in fee simple, fee tail, or any less estate, shall be given by deed or will, to any persons but such as are at the time of the delivery of such deed, or death of the testator, in being, or to their immediate issue or descendants." Gen. Stats. 1887, § 2952.

The above statute was repealed in 1895 by chapter 249, Pub. Acts 1895, and the common-law rule of perpetuities since that time has been the rule of law in Connecticut. The repeal of the statute, however, did not validate the 1879 agreement. But, by the subsequent ratification of the terms of the trust agreement of 1879, the agreement of 1915 created a good and valid trust according to the terms of the agreement of 1879, as amended. This point has already been adjudicated by the superior court of Connecticut.

■ In the 1915 agreement there was no reserved power to revoke, alter, or amend, and, having created a good and valid trust agreement whereby the settlor alienated his entire title to the trust property, and thereby removed the entire economic benefit in it from himself, with the exception of income of the annual amount of $3,600, he had no right by agreement with the trustee to alter the terms of said trust, so as to increase his annual income payments to $4,800, and deprive the remaindermen of the amount of this increase. Therefore the purported agreement of 1918 was a nullity, and in no way affected the terms of the 1915 trust.

■ In the instrument of May 1, 1920, the provision was that the settlor should receive from the *net* income of said trust estate the sum of $3,600, "and no more," to that extent modifying what he had previously attempted

to do by the 1918 agreement, and, further, in that the $3,600 was to be paid to him entirely from the income of the trust fund.

In the Circuit Court of Appeals, Second Circuit, in the case of Stoehr v. Miller, 296 F. 414, it was held that, if a trust is perfectly created, although it is voluntary, it is irrevocable, and is not affected by subsequent acts of the settlor or trustee. In that case, and in the cases cited therein, as well as other authorities examined, the settlor or grantor attempted to recover some interest in that which he had already alienated. In the instant case, however, the settlor by the 1920 instrument abandoned any claimed right to an income in excess of $3,600 per annum. It seems to me that this is valid, for, while the settlor had no power to increase his rights under the trust, as he attempted to do in 1918, he could give up any privileges retained by him under the 1915 agreement, because such surrender would in no way decrease the rights of the remaindermen, but would rather enhance them. The provision in this agreement as to payments to the children, however, is of no effect, for the reason that the settlor, after the agreement of 1915, had no control over the trust property in so far as the rights of his heirs at law were concerned.

The defendant contends that the decedent until his death had the whole beneficial interest in the trust property, and that he intended from that moment his interest should cease, and that the whole beneficial interest as well as the legal title should pass into the possession and enjoyment of his heirs. The defendant misconstrues the 1915 agreement, when the settlor transferred all of his interest in and to the trust res, subject only to its payment to him of the reserved income. So long as the settlor retained no title, and no right to acquire any, nor any power of disposition of the trust, the fact that the beneficiaries were postponed until the settlor's death to an actual enjoyment of the corpus of the trust is immaterial.

Section 402(c) of the Revenue Act of 1921 is as follows:

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

* * * * * * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death. * * * *"

For the reasons already stated, I am of the opinion that at the time of the passage of section 402(c) the decedent had alienated his entire beneficial interest in the trust estate, except the right to receive the annual sum of $3,600 from the net income of said estate.

Few of the cases seem to apply with aptitude to the facts before us. Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, on its facts presents a case where the decedent up to the moment of his death had retained a legal interest in certain insurance policies, which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them.

Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, presented a case where seven trusts had been created by the settlor, two of which were revocable at any time, and consequently, the transfer of the property not being thereunder complete until the death of the settlor, the tax was rightly imposed. As to the remaining five trusts, however, he could effect no change in the beneficial interest in the trusts, without the consent, in the case of four of the trusts, of the person entitled to that interest, and, in the case of one trust, without the consent of a majority of those so entitled. The court held that the power to dispose of the various trust res had passed as completely from any control by the decedent as if the gift had been absolute, and consequently the transfers as to those trusts were not distinguished from any other gift inter vivos not subject to the tax. It may even be well to note that the latter trusts were created after the passage of the 1918 act (40 Stat. 1057) containing similar provisions to the 1921 act.

Nor does Frew v. Bowers (C. C. A.) 12 F. (2d) 625, reach to the root of our problem, for in that case we find that Alice J. Nash had created a trust by her will, which had been probated in 1904, and to the corpus of which her husband, William A. Nash, had made a contribution in 1910. By the terms of the will of Alice Nash, her husband was to receive the income for life, with remainder in trust for life as to one part for a son, and as to the other part for a daughter. Clearly the contribution of Mr. Nash in 1910 was an absolute and irrevocable gift. The fact that he was a beneficiary as to the income from the trust created by his wife is a mere incident, so far as applying these facts to the instant case may be concerned.

It should not be forgotten that the transfer made by the settlor in the instant case took place before the law went into effect. A transfer was made by him so completely as to alienate from him the possibility of recovering any portion whatever of the property so transferred. His title to it had been as much divested, so far as the trust res was concerned, as if there had been an absolute disposition of the property. It appears to me, therefore, that this case comes almost squarely within the condemnation expressed by the Supreme Court in Nichols v. Coolidge, 274 U. S. 531, 542, 47 S. Ct. 710, 714 (71 L. Ed. 1184, 52 A. L. R. 1081):

"This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. Brushaber v. Union Pacific R. R., 240 U. S. 1, 24, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Barclay & Co. v. Edwards, 267 U. S. 442, 450, 45 S. Ct. 135, 348, 69 L. Ed. 703. See, also, Knowlton v. Moore, 178 U. S. 41, 77, 20 S. Ct. 747, 44 L. Ed. 969. And we must conclude that section 402(c) of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious, and amounts to confiscation. * * * "

See, also, the opinion of Judge Hand, concurring, in Frew .v. Bowers (C. C. A.) 12 F.(2d) 629.

The burden of the act is imposed upon a completed and remote transaction, and the consequences in the form of a tax are such that they could not have been within foresight or contemplation when the transfer was designed and consummated.

The demurrer is overruled.