**HINES v. LOUISVILLE TRUST CO. et al.**

Court of Appeals of Kentucky.
Nov. 13, 1952.

Rehearing Denied Feb. 6, 1953.

Marshall Funk, Bowling Green, for appellant.

Coleman, Harlin & Orendorf, Bowling Green, for appellee.

MILLIKEN, Justice.

Appellant, W. T. Hines, administrator with the will annexed of the estate of A. M. Rowe, instituted this action against the Louisville Trust Company (hereinafter referred to as the Trust Company) and the Christian Church Widows and Orphans Home (hereinafter referred to as the Orphans Home) to have a certain voluntary trust agreement declared revoked, terminated and at an end. The chancellor adjudged that the decedent had no power to revoke the agreement, and that it was therefore in full force and effect.

On August 11, 1936, the decedent, as settlor, delivered to the Trust Company, as trustee, certain cash and securities, to be held under the terms of a voluntary trust agreement which empowered the trustee to manage and invest the corpus and to pay the decedent the income therefrom during his life. It further provided that after his death, the income was to be paid to his wife during her life and that after her death the income should be paid to the Orphans Home. It also provided that under certain circumstances the corpus might be paid to the Orphans Home.

On October 9, 1939, the decedent executed a supplemental trust agreement (as of August 11, 1936, the date of the original agreement), which assigned additional securities to the trust estate under the same terms and conditions as the original instrument except that it recited the death of his wife and provided that should the Orphans Home cease to exist, the trust should be for the benefit of his nephews and should none of them be living, then it could be for the benefit of the College of the Bible of Transylvania College.

The 1939 supplemental trust agreement contains only the following provision susceptible of being construed as a reservation of a power of revocation by the settlor:

"Rowe reserves to himself the right at any time in his judgment to change the Trustee from the Louisville Trust Company to such other corporation or individual as he may choose, and so continue to make changes from time to time as he deems advisable."

On the same date the supplemental trust agreement was executed, i. e., October 9, 1939, the decedent executed a will and after making several specific bequests, he devised the residue of his estate to the Trust Company to hold in accordance with the terms of the supplemental trust agreement. Subsequently he executed six codicils to this will. The last codicil was made on June 12, 1950, and reads:

"I, A. M. Rowe of Bowling Green, Warren County Kentucky do on this the 12th day of June 1950 revoke all the Codicils which have been made by me except the one to Dr. A. D. Donnelly, Sr. for $1000 and Dr. J. H. Blackburn, Sr. for $250 *and the above revocations, if any, made by me apply to a voluntary Trust agreement made by me with the Louisville Trust Company, Louisville, Ky. on October 9th, 1939 (as of August 11th, 1936.)* I am doing this for the reason that at times I have not been in a mental condition to protect myself, and there may have been codicils made at such times under duress and coercion therefore I want to void all codicils except the two herein above mentioned." (Italics ours.)

The appellant contends: (1) That the decedent retained the power of revocation under the trust agreement and consequently revoked the trust agreement by virtue of the sixth codicil to his will; and (2) that the trust agreement was intended to operate as a testamentary disposition and must fail because it was not executed with the formalities required by our statutes relating to wills.

Whether the language employed in the sixth codicil is a sufficient indication of the decedent's intention to revoke the voluntary trust agreement is debatable inasmuch as it is possible that he intended to revoke only the testamentary dispositions which were to be added to the voluntary trust agreement after his death. However, we shall assume for the sake of argument that the language employed is sufficient to show an intent to revoke the voluntary trust agreement.

Clearly, there is no express power of revocation written in the trust instrument, for the reservation of the right to change trustees does not extend to other provisions. The general rule is to the effect that where a valid and effective voluntary trust has been created and no power of revocation has been reserved, it cannot be revoked by the creator without the consent of the beneficiaries thereunder. Restatement of the Law of Trusts, Volume 2, Section 338, page 1033; 65 C.J., Trusts, Section 113, page 341; Annotations 28 A. L.R. 941, 91 A.L.R. 102 and 131 A.L.R. 457; Underhill v. U. S. Trust Co , 227 Ky.

444, 13 S.W.2d 502; Burton v. Burton, 198 Ky. 429, 248 S.W. 1031.

■ In the instant case the Orphans Home, as beneficiary, did not consent to a revocation of the trust agreement. Furthermore, a careful examination of the trust instument fails to reveal an implied power of revocation.

■■ If the settlor intends to reserve the power of revocation but omits it by mistake from the trust agreement, he may have the instrument reformed, or if he was induced to create the trust by fraud, duress, undue influence or mistake, the trust may be set aside. Restatement of the Law of Trusts, Volume 2, Section 330(1)(b), page 985. In the case at bar, however, there is no proof of any such occurrences.

■ The appellant infers that since the first trust agreement was slightly modified, this indicates that the decedent retained the power of revocation. As stated in 65 C.J., Trusts, Section 112, page 340:

"* * * The settlor and trustee may not without the beneficiaries' consent modify the trust to the prejudice of the beneficiaries, although it is permissible to modify the trust where the settlor surrenders privileges retained under the trust agreement."

In this case the decedent did not modify the original trust agreement to the prejudice of the Orphans Home, but conversely, made it much more advantageous and desirable to them.

■ The appellant's next contention, that the voluntary trust agreement is testamentary and hence void as to the Orphans Home is without merit. As a basis for this contention, the appellant refers to that part of the trust agreement reserving to the decedent not only a right to the income during his life but to so much of the corpus as is necessary for his support. Where one purports to create a trust inter vivos and no interest passes to the beneficiary before the death of the settlor, the intended trust is a testamentary trust and invalid unless the requirements of the statutes relating to the validity of wills are complied with. Restatement of the Law of Trusts, Volume 1, Section 56, page 167. In the instant case, however, an interest passed to the Orphans Home during the lifetime of the decedent, even though its enjoyment of the trust was postponed until after the decedent's death. As stated in Scott on Trusts, Volume 1, Section 56.5, page 332:

"If the beneficiary acquires an interest during the lifetime of the settlor, the disposition is not testamentary within the requirements of the Statute of Wills merely because it takes effect in enjoyment or possession on the settlor's death. If the owner of property transfers it to another person upon trust to pay the income to the settlor himself during his lifetime and to pay the principal to a designated third person on his death, and the settlor reserves no power to revoke or modify the trust, the trust is undoubtedly not testamentary. The disposition is final and definitive during the lifetime of the settlor. At the time of the conveyance the beneficiary acquires a future interest which may be vested or contingent. The trust is valid although no instrument is executed with the formalities required by the Statute on Wills. The same result has been reached where the settlor reserves not only a right to the income during his life but a right to so much of the principal as is necessary for his support, whether the determination of the amount necessary is left to the trustee or to the settlor himself. The disposition of the balance clearly is not testamentary since the settlor has surrendered his power to control it." See Stouse v. First Nat'l Bank of Chicago, Ky., 245 S.W.2d 914.

The judgment is affirmed.