61 N.J. Super. 109 (1960)
160 A.2d 186
CENTRAL HOME TRUST CO., ETC.
PETTIT A. MYER AND THE HOWARD SAVINGS INSTITUTION, SUBSTITUTED TRUSTEES UNDER THE DEEDS OF TRUST OF CHARLES R. MYER, DECEASED, PLAINTIFFS,
v.
PETTIT A. MYER, MARY ALLEN, (FORMERLY MARY APPLEBY) CHARLES R. MYER, JR., PETTIT A. MYER, EXECUTOR OF THE ESTATE OF MILLARD B. MYER, JOHN R. MYER, ELIZABETH M. DUNN, VIRGINIA M. HOWLAND, CHARLES R. MYER II AND PETTIT A. MYER, EXECUTOR OF THE ESTATE OF CHARLES R. MYER, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 14, 1960.
*112 Mr. Angelo A. Mastrangelo appeared for plaintiffs (Messrs. Fox and Schackner, attorneys).
Mr. William C. Connolly appeared for defendant Pettit A. Myer, individually and as Executor of the Estate of Millard B. Myer, deceased (Messrs. Riker, Danzig, Marsh & Scherer, attorneys).
Mr. George S. Fischler appeared for defendants John R. Myer and Elizabeth M. Dunn (Messrs. Clapp & Eisenberg, attorneys).
MINTZ, J.S.C.
Plaintiffs Pettit A. Myer and the Howard Savings Institution, substituted trustees under two indentures of trust executed by Charles R. Myer, deceased, seek approval of their First Intermediate Account of the administration of this trust and also a construction of, and instructions concerning, the two trust indentures and a subsequent indenture of trust which purports to amend the earlier two trust indentures.
The settlor, Charles R. Myer, by trust indentures dated June 23, 1924 and November 4, 1938, respectively, created irrevocable trusts. Paragraph First of the 1924 indenture reads as follows:
"FIRST: To receive, hold, manage, sell, invest, and reinvest the same and every part thereof, in the manner hereinafter specified, and to collect, recover and receive the rents, issues, interest, income and profits thereof, hereinafter called `income', and after deducting the commissions of the Trustee as hereinafter provided, and the proper and necessary expenses in connection with the administration of the trust, to pay the same in quarterly instalments of equal amount, or as nearly equal as possible, to Anna B. Myer, wife of the party of the first part, [the settlor] for and during the term of her natural life, and upon her death, to pay the income in quarterly instalments in equal shares, to my children, Pettit A. Myer, Mary Appleby, wife of Richard H. Appleby, Charles Randolph Myer, Jr., and Millard B. Myer, for and during the term of each of their natural lives, and upon the death of each child, to whomever and in such shares as by his or her Last Will and Testament *113 he or she may appoint, and in default of such appointment, to his or her lineal descendants, per stirpes and not per capita, and if he or she leave no lineal descendants, him or her surviving, to my surviving child or children."
The provisions of Paragraph First of the November 4, 1938 trust were, for all practical purposes, identical to the provisions of Paragraph First of the earlier trust dated June 23, 1924.
On October 31, 1941 the settlor executed a third indenture of trust. This indenture recited the creation of the two earlier irrevocable trusts and further that "it was the purpose and intention" of the settlor "to make provision for the ultimate disposition of the trust property upon the happening of certain events mentioned and described in paragraph `First' of each of said indentures." It goes on to say that it had been discovered that through "inadvertence and oversight, no provision is contained in said indentures for the disposition of the corpus of said trust property upon the happening of said events and that this indenture is required and rendered necessary to carry out the purpose and intention" of the settlor with respect to the disposition of the corpus of the trust property described in said indentures. The settlor then provided as follows:
"FIRST: To receive, hold, manage, sell, invest and reinvest the same and every part thereof, in the manner hereinafter specified, and to collect, recover and receive the rents, issues, interest, income and profits thereof, hereinafter called `Income', and after deducting the commissions of the Trustee as hereinafter provided, and the proper and necessary expenses in connection with the administration of the trust, to pay the same in quarterly instalments of equal amount, or as nearly equal as possible, to Anna B. Myer, wife of the party of the first part, [the settlor] for and during the term of her natural life, and upon her death, to pay the income in quarterly instalments in equal shares, to my children, Pettit A. Myer, Mary M. Appleby, Charles Randolph Myer, Jr., and Millard B. Myer, for and during the term of each of their natural lives, and upon the death of each child to pay one-fourth of the corpus of the trust property to whomever and in such shares as by his or her Last Will and Testament he or she may appoint, and in default of such appointment, to his or her lineal descendants, per stirpes and *114 not per capita, and if he or she leave no lineal descendants, him or her surviving, to my surviving child or children." (Emphasis supplied.)
The trustee paid the income from the trusts to the settlor's wife, Anna B. Myer, until her death in 1941, and thereafter in equal shares to his four children. The settlor, Charles R. Myer, died in 1943 and in his will directed that his residuary estate be distributed in equal shares to his children. The settlor's children, Pettit A. Myer, Mary M. Appleby (now Mary M. Allen), Charles Randolph Myer, Jr. (the father of the defendants, John R. Myer and Elizabeth M. Dunn), and Millard B. Myer, survived both the settlor and his wife. In 1954 the original trusts were consolidated into one trust and the four surviving children received the income from it in equal shares.
Millard died testate on September 8, 1958. He left no lineal descendants. The parties agree that no specific mention is made in Millard's will of the power of appointment and that it contains no provision exercising the power. The third paragraph in Millard's will makes disposition of "all the rest, residue and remainder of my estate of whatever kind and wherever situate." A residuary clause, general in its nature, will not ordinarily suffice to exercise a power of appointment. Bank of New York v. Black, 26 N.J. 276 (1958); Lippincott v. Haviland, 93 N.J. Eq. 585 (Ch. 1922). Where there are no facts or circumstances indicating that the testator intended to exercise a power of appointment by means of a general residuary clause of his will, then it must be held that he failed to exercise the power of appointment. Methodist Episcopal Home for Aged of New Jersey v. Tuthill, 113 N.J. Eq. 460 (Ch. 1933). Clearly Millard did not exercise his testamentary power of appointment and since he left no lineal descendants surviving him, the basic issue in this case concerns the disposition of one-fourth of the corpus of the trust estate.
Pettit A. Myer, individually and as executor of Millard's estate, contends that the agreement dated October 31, 1941, *115 which purported to amend the earlier two indentures of trust, adversely affected only the reversionary interest of the settlor and was in no way detrimental to the interests of the designated beneficiaries, but on the contrary, beneficial to them. Consequently he urges that the 1941 amendment is valid and presently renders distributable one-fourth of the corpus to the three surviving children of the settlor. John R. Myer and Elizabeth M. Dunn, grandchildren of the settlor, urge the invalidity of the 1941 amendment and contend that the trustees must hold the controverted one-fourth of the corpus until the death of the last surviving child of the settlor.
The primary inquiry is to ascertain the intent of the settlor from the language of the instrument itself and if the language is plain and unambiguous, the instrument must be given effect accordingly. Fidelity Union Trust Co. v. Heller, 18 N.J. Super. 49 (App. Div. 1952). It is urged that the two earlier indentures of trust set up irrevocable life estates in Millard's surviving brothers and sisters in the income that he had been enjoying, which would be wiped out by a distribution of the one-fourth of corpus at this time. However, the settlor's intention to limit the trusts to income and not to deal with corpus is not so plainly expressed as defendants John R. Myer and Elizabeth M. Dunn contend. The only change effected by the supplemental agreement was the insertion of the additional words "to pay one-fourth of the corpus of the trust property." This clause could very easily have been inadvertently omitted from the two earlier indentures. In these instruments, after defining the term "income," the trustee is directed to pay the same in quarterly installments to Anna B. Myer "for and during her natural life." In directing the trustee as to the distribution of income upon the death of Anna B. Myer, the word "income" is repeated. However, in directing distribution of the trust estate upon the death of any of the settlor's children, the word "income" does not appear, the clause "during the term of each of their natural lives" *116 is also absent, and the reference is to "shares." Additionally, Paragraph Third in the two earlier indentures, in part, provides that:
"In any case in which the Trustee is required, pursuant to the provisions of this indenture to divide the principal of the trust estate into parts or shares or to distribute the same, it is authorized and empowered in its sole discretion to make such division or distribution IN KIND * * *."
Here, plainly, is a provision pertaining to distribution of principal which may very likely be referable to Paragraph First in the two indentures. And of course the intent of the settlor is plainly expressed in the supplemental 1941 agreement wherein he specifically states that through inadvertence his intent to provide for disposition of the corpus was omitted from the first paragraph in each of said indentures.
Assuming, arguendo, that the plain intent of the settlor in the first two indentures of trust was to make disposition of income and not to deal with corpus, an amendment which seeks to dispose of his reversionary interest in corpus without in any way adversely affecting the right of the beneficiaries, vested and contingent, should be declared valid. This is so notwithstanding the general language in Gulick v. Gulick, 39 N.J. Eq. 401 (Ch. 1885) to the effect that unless a settlor has reserved a power of amendment or revocation, he cannot later amend or revoke the provisions of the trust.
It is urged that the settlor could not wipe out the irrevocable life interests given the surviving children in Millard's income share. The authorities cited involve situations where the settlor endeavored to recapture what he had already given away. This the courts have held he cannot do. Gulick v. Gulick, supra; New Jersey Title Guaranty & Trust Co. v. Parker, 84 N.J. Eq. 351 (Ch. 1915), affirmed 85 N.J. Eq. 557 (E. & A. 1915); Thebaud v. Morristown Trust Co., 8 N.J. Super. 540 (Ch. Div. *117 1950). No authority has been cited where a modification of a trust agreement which did not operate to the detriment of the cestuis was declared invalid.
In Gulick v. Gulick, supra, the court specifically pointed out that the second declaration of trust operated to the prejudice of children and grandchildren who had acquired rights under the first declaration of trust and was therefore invalid. It might be inferred from this decision that in the absence of a showing of prejudice to the rights of any cestuis acquiring rights under an earlier trust agreement the subsequent agreement will be enforced. In any event Gulick does not squarely pass upon this point.
In Boyd v. United States, 34 F.2d 488, 490 (D.C. Conn. 1929), the court stated that the rule of irrevocability was applied in cases where the settlor sought to retrieve an interest he had alienated. The court, in upholding the validity of one of several amendments to an inter vivos trust, stated:
"[W]hile the settlor had no power to increase his rights under the trust, * * * he could give up any privileges retained by him * * * because such surrender would in no way decrease the rights of the remainderman but would rather enhance them."
In Hines v. Louisville Trust Company, 254 S.W.2d 73, 75 (Ky. Ct. App. 1952), a supplemental agreement in connection with an irrevocable inter vivos trust was declared valid. The court said:
"`The settlor and trustee may not without the beneficiaries' consent modify the trust to the prejudice of the beneficiaries, although it is permissible to modify the trust where the settlor surrenders privileges retained under the trust agreement.' In this case the decedent did not modify the original trust agreement to the prejudice of the Orphans Home, but conversely, made it much more advantageous and desirable to them."
In the case of In re Jackson's Trust, 351 Pa. 89, 40 A.2d 393 (Sup. Ct. 1945), the donor in 1911 created an irrevocable trust in which he gave his wife income for life and reserved a general power of appointment by will over the *118 corpus on her death. In 1936 he set up another trust wherein he released the general power of appointment and made provisions for the disposition of income and corpus upon the death of his wife. The court there held that the consent of the life tenant under the 1911 indenture to the extinguishment of the power of appointment was unnecessary because her interest in the trust was in no way affected. The gift of the retained reversionary interest under the 1936 instrument was valid. See also New York Trust Co. v. Weaver, 298 N.Y. 1, 80 N.E.2d 56 (Ct. App. 1948); In re Harwood, 113 N.Y.S.2d 587 (Sup. Ct. 1952). Restatement (Second) Trusts § 331 (2) (1959) generally provides that in the absence of grounds for reformation or rescission the settlor cannot modify the trust if he did not reserve a power of modification. However, the author under comment a. states the scope of Rule 331 to be that after the trust is created the settlor cannot modify it either by cutting down or taking away the interest of any beneficiary without the consent of that beneficiary. Analogous are those cases where the courts have decreed a partial termination of a trust, although one or more of the beneficiaries did not consent to such termination on the ground that the interests of the non-consenting beneficiaries were not prejudiced thereby. Fidelity Union Trust Co. v. Birch, 121 N.J. Eq. 132 (Ch. 1936); Scott, Trusts (2d ed. 1956) § 340.2, at p. 2502. To same effect see Restatement (Second) Trusts § 338 (2) (1959).
The defendants John R. Myer and Elizabeth M. Dunn urge that under the original instruments the last surviving child of the settlor might receive all the income, while under the 1941 amendment this is not possible; and therefore the amendment is detrimental to the beneficiaries and invalid. This presupposes that the accrued shares will survive. However, in the absence of a contrary intent, here lacking, accrued shares do not survive. Boggs v. Boggs, 69 N.J. Eq. 497 (Ch. 1905); Trenton Trust & Safe Deposit Co. v. Cook, 88 N.J. Eq. 516 (Ch. 1918); Skinner v. Boyd, 98 N.J. Eq. *119 55 (Ch. 1925), affirmed o.b. 100 N.J. Eq. 355 (E. & A. 1926). True, these cases pertain to testamentary trusts. The rule, however, is equally applicable to inter vivos trusts.
The 1941 supplemental agreement is not prejudicial, but on the contrary beneficial to the settlor's surviving three children. In lieu of receiving an income for life from one-fourth of the corpus which equally divided constitutes income to each of them from one-twelfth of the corpus, they will now each receive one-twelfth of the corpus. They do not complain. Nor is any prejudice occasioned to any other cestuis. The 1941 agreement merely purports to make disposition of the settlor's inadvertently retained reversionary interest in the corpus, and is not prejudicial to any interests created by the two earlier trust indentures. It is valid.
A judgment may be submitted in accordance with the views herein expressed, consented to as to form, or to be settled on notice.