## L. Murray Perkins

### *v.*

### Charles F. Partridge and others.

In order to file a bill of review upon the discovery of new matter, the rule is that the matter must not only be new, but it must be such as the party, by the use of reasonable diligence, could not have

known.—*Held*, that the evidence set up to support the petition in this case did not fulfill either requirement of the rule.

---

Bill for relief.   On petition of defendant, Charles F. Partridge, for leave to file a bill of review.

*Mr. S. Howell Jones*, for petitioner.

*Mr. B. A. Vail*, for complainants.

THE CHANCELLOR.

The defendant, Charles F. Partridge, applies, by petition, for leave to file a bill of review upon newly-discovered evidence.   The grounds stated in the petition are that the whereabouts of a Mr. Berry, a lawyer of New York, who, it is alleged, was a material witness for the petitioner, has, since the decree was made, been discovered by the petitioner, but could not previously be ascertained by him, though he diligently sought to learn it; that Mr. Berry will testify that he heard the conversation between Charles Partridge and Mr. Reed, and that the statements of the former to the latter were not, as Reed testifies, that the mortgage in question in the suit was a perfectly good, first-class mortgage; that the parties bound for its payment were good; that the interest had been paid promptly, and that he had sold the land for $25 an acre, and would not sell any more of the tract for less than $30 an acre; but that his statements were qualified, and were, that Partridge considered the mortgage to be good, but that Reed and the complainant must not take his opinion on the subject, as people's opinions might differ, but they must make inquiry for themselves; that Bouton & Phillipps had assumed the payment of the bond and mortgage of $7,000, and were a firm represented to be in good standing in the flour business in Albany, and that they had paid the interest when it became due.

Further, that the petitioner can show by Berry that the sale and conveyance by Charles Partridge to Bouton & Phillipps was *bona fide* and for $51,000, and that the conveyance to Thomas H. Phillipps was merely voluntary, and for the purpose of vesting the title in him that he might give the mortgage on the premises and convey the property subject to it to Bouton & Phillipps, who were to assume it, but, for reasons connected with their commercial credit, did not want to become bound in the mortgage.  Further, that he can now produce Bouton, of the firm of Bouton & Phillipps, whose whereabouts he could not ascertain (though he strove to do so) till after the decree, and can prove by him that the interest was paid by Bouton & Phillipps on the mortgage, in September and April, 1875.  He further states that he can now produce the deed from Thomas H. Phillipps to Bouton & Phillipps.  He also states that, because of his inability to produce the deed, and so fully prove the assumption, he did not produce evidence as to the commercial standing of that firm, which he otherwise would have done.

When the application is made to file a bill of review upon the discovery of new matter, the rule is, that the matter must not only be new, but it must be such as the party, by the use of reasonable diligence, could not have known; for, if there be any laches or negligence in this respect, that destroys the title to the relief.  *Story's Eq. Pl.* § 414.  The proof as to inquiry for Mr. Berry's whereabouts is by no means such as to show diligence.  But, apart from that objection, Charles Partridge, as to whose statements Reed testified, though twice examined as a witness for the defendants in the cause, did not deny that he had made those statements just as Reed swore he did.  Indeed, he was not examined on that subject at all.  His testimony in reference to them would have been better than that of Berry, who took no part in the conversation, but merely, as is alleged, overheard it.  He was in nowise interested in it, and it is to be presumed that Partridge would remember it far better than he.  If Berry would indeed swear that the conveyance to

Thomas H. Phillipps was merely voluntary, and for the purpose of vesting the latter with the title to the property so that he could give a mortgage on it for Bouton & Phillipps (Dewitt H. Phillipps) to assume in the conveyance to them, he would testify in direct contradiction of Charles Partridge, for he testified that the sale to Thomas H. Phillipps was a *bona fide* sale. His testimony on that point was, that he sold the property to Thomas H. Phillipps, and took the $7,000 mortgage as part of the consideration; that the latter thought he could make something out of the purchase; that he (Partridge) made no agreement with him otherwise than to sell the property to him; that he could not say that he offered to sell it to any one before he sold it to Thomas H. Phillipps; that the transaction with Bouton & Phillipps was considerably subsequent to the sale to Thomas H. Phillipps; that after he had conveyed the property to Thomas H. Phillipps he had an opportunity to sell it, and, as Phillipps had not yet sold it, he paid him something to convey it to Bouton & Phillipps. He testified that, on the conveyance to Thomas H. Phillipps, the latter paid him $10 or $15, besides giving the mortgage, and, in voluntary explanation of this, he said he desired to say that that money was not the full amount which Phillipps was to pay him for the property, and he immediately added, in answer to a cross-question, that the consideration which Phillipps was to pay for the property, had he kept it, was, he thought, some $15 or $20 an acre. This testimony is utterly at variance with what it is proposed to prove by Berry.

As to Bouton, the petitioner shows no diligence to procure his testimony. He obtained his knowledge of his whereabouts from Dewitt H. Phillipps, Bouton's late partner, and he knew at all times during the trial where Dewitt H. Phillipps was to be found. He proposes to prove by Bouton that Bouton & Phillipps assumed the $7,000 mortgage, but Dewitt H. Phillipps could have proved that just as well. He also proposed to prove by Bouton that he received the interest on the $7,000 mortgage from Bouton & Phillipps. But

Perkins *v.* Partridge.

Charles Partridge so testified.   It is true the receipts on the bond, in his own handwriting, appeared to contradict him, showing that he received the interest from Thomas H. Phillipps, but he swore that the interest was paid by Bouton & Phillipps.

The petition contains a copy of a statement of account between Bouton & Phillipps and Charles Partridge, said to have been made by the former, showing how the interest due in September, 1874, was paid.   It may be presumed that Dewitt H. Phillipps could have proved the transaction, for it was a firm transaction.   By the statement, it appears that the interest was, all but $52.55, paid by an offset of the interest which Charles Partridge was bound to pay on two mortgages of $2,500 each, but Charles Partridge testified that Bouton & Phillipps paid the interest in cash or by checks.   Nor would the production of the deed to Bouton & Phillipps be of any importance in the cause.   A copy of it was offered in evidence, apparently without objection, and was used on the hearing.   The defendants might have proved the loss of it by Dewitt H. Phillipps.   He could have sworn as to the assumption, also, if any there was.   Bouton, it appears, from his letter copied into the petition, does not remember distinctly whether his firm assumed the payment of the mortgage or not.   The defendants gave evidence as to the commercial standing of Bouton & Phillipps.   Charles Partridge swore to it.   They might have offered more had they seen fit to do so.

There is no new matter shown which would entitle the petitioner to leave to file a bill of review.   Indeed, there is no new matter at all.

The petition will be dismissed, with costs.