NEW JERSEY TITLE GUARANTEE AND TRUST COMPANY

*v.*

RICHARD F. PARKER, executor, &c.

[Submitted December 30th, 1914. Decided February 8th, 1915.]

Where a grantor, who had irrevocably conveyed certain securities to a trust company in trust, to pay the income to himself and wife for his life, and after his death to pay the principal to those to whom he should direct by will, and, if he should die intestate, to his heirs, made a will by which he directed the payment of the principal to the children of his brother, he could not change that disposition by an instrument directing the payment to his wife, without the consent of the children, since the creator of a trust, without reserved power of revocation, cannot change the terms of the trust without the consent of all the beneficiaries.

---

On final hearing on bill, answer, replication and proofs.

The original bill in this case was a bill of interpleader and had relation to some securities in the possession of the complainant which were claimed by the defendant Katherine Junkin and by the defendant Richard Fay Parker, as executor, and his children. In due course a decree of interpleader was passed and statements of claim were filed by the interpleading parties. The claim of Mrs. Junkin has for its object the establishment of a marriage settlement which, it is alleged, was intended to be executed by one Henry M. Parker in her favor. The circumstances are these: On August 8th, 1902, Mrs. Junkin, then unmarried, her maiden name being Bailey, arrived at the age of twenty-one years, and shortly thereafter her hand was sought in marriage by Henry M. Parker. Prior to the marriage a conversation was had between Miss Bailey and Mr. Parker, in which it is said that Miss Bailey refused to marry him until he should make provision for her by placing his money in trust, and arranging that one-third thereof should be paid to her, and at his death the whole fund should go to her. To this he appears to have assented. In pursuance of the understanding that was arrived at, Mr. Parker, on June 4th, 1903, executed a document in the form of a trust deed, by which he transferred the securities in question to the New Jersey Title Guarantee and Trust Company in trust by the following words of transfer:

"That the said party of the second part, in consideration of the sum of one dollar to him in hand paid by the party of the second part * * * has irrevocably granted, conveyed, transferred, assigned and set over, and does hereby irrevocably grant, convey, transfer, assign and set over to the party of the second part * * * all and singular the securities and money enumerated in the annexed schedule * * *."

The deed then proceeds as follows:

"With full power to retain or change at all times any and all present or future investments, and to reinvest any and all proceeds of such investments in good interest bearing securities to be approved by it, whether such proceeds shall be derived by it from the sale of such securities or from the payment of the amounts secured by the several parts thereof, or from stock dividends or other accretion to the principal; to receive and collect the rents, interest, income and dividends thereon, and after deducting therefrom its compensation as hereinafter fixed to pay over the balance of such rents, interest, income and dividends to the said

party of the first part, during the term of his natural life, in equal quarterly payments as nearly as may be, or in more frequent payments if the same may be conveniently made from time to time by the party of the second part, and shall be requested by the party of the first part.

"Second: To receive and hold upon the trusts hereby created such other and further property of every nature as may from time to time be granted, assigned, transferred or conveyed to it by said party of the first part.

"Third: Upon the death of the said party of the first part to pay over and distribute the entire trust fund then in its possession under the terms of this deed to such persons and in such proportions as the party of the first part shall by his last will and testament, direct and provide; but if said party of the first part shall die intestate then, upon his death, to pay over and distribute said trust fund to and among such persons as would be entitled to receive the same under the intestate laws of the State of New York had the party of the first part died intestate and a citizen and resident of that state."

The execution of this deed was acknowledged on June 11th, 1903. On that day it, with the securities in question, which were inventoried in a schedule annexed to the deed, were delivered to the trust company, and on June 17th, 1903, the parties were married. At about this time Mr. Parker appears to have given directions to the trust company about the division of the income from the securities. This transaction appears in an entry in the books of the trust company in the following words:

"Mr. Parker has elected to have his income mailed to him monthly and has instructed us to send the net amount to him as follows, two-thirds in a draft or check to his order, and one-third in a draft or check payable to the order of his wife Katherine Frances Parker."

The trust company appears not to have had any written authority, at that time, from Mr. Parker for the division of the income between him and his wife. This they sought to get, and finally, on November 4th, 1905, received from him a direction, in writing, as follows:

"Under an agreement dated June 4th, 1903, you are to pay over to me a certain income from investments and securities held by you in trust for me, and I hereby authorize you to pay one-third of such income to my wife Katherine Frasier Parker, and the remainder to me, in monthly installments."

23

Subsequently, and on October 10th, 1909, Mr. Parker authorized the trust company to pay over one-third of his income, including that from his grandmother's estate, to his wife, Katherine, and from that time forward, until his death, his wife received for her own use one-third of the income from the securities mentioned in the inventory annexed to the deed of trust, and also from his grandmother's estate.

At or about the time when the deed of trust was made, Mr. Parker executed a will, which was destroyed several years later, and was not before the court. The evidence was, however, that by the will, upon his death, all his property was devised to his wife. On December 16th, 1903, Mr. Parker executed a power of attorney to the trust company, which authorized it to receive and receipt for all moneys and securities payable to him, to endorse checks for deposit and collection, transfer stock, and to hold such moneys and securities upon the trusts created in the deed of trust above mentioned in like manner as if the same had been originally mentioned and enumerated in said deed of trust. This document, in connection with the deed of trust, appears to have invested the trust company with full and complete control over any securities of Mr. Parker's which came into its hands. In March, 1909, Mrs. Parker, her husband and her mother were living together in Florence, Italy. Some time during that month Mrs. Parker left her husband and returned to the United States with the intention of never again returning to or living with him, nor did she after that either return to him or live with him. Her mother, Mrs. Margaret H. Bailey, remained in Florence with Mr. Parker. Some time during the early summer of that year Mrs. Parker caused to be prepared by her solicitor in New York a document which contains the following recitals:

"Whereas heretofore and on or about the fourth day of June, 1903, I, the undersigned, Henry M. Parker, then being a resident of the city of Yonkers, Westchester County, New York, did make and enter into an ante-nuptial agreement with Katherine F. Bailey, then my intended wife, which provided that in consideration of such marriage I would deliver all the stocks, bonds and other securities then owned by me to the New Jersey Title Guarantee and Trust Company to be held in Trust, two-thirds of the income thereof to be paid to me during the term of my natural life, and one-third of said income during such period to said Katherine F. Bailey, in the event that she should keep her promise to

become my wife. The said ante-nuptial agreement further provided that upon my death the entire principal of said trust estate should be paid to said Katherine F. Bailey; and

"Whereas the said ante-nuptial agreement was not made in writing and no written memorandum thereof was signed by me, except that pursuant thereto and on said 4th day of June, 1903, I delivered to said New Jersey Title Guarantee and Trust Company all stocks, bonds and other securities then owned by me, and entered into a trust agreement with said New Jersey Title Guarantee and Trust Company which provided that said trust company should hold said stocks, bonds and other securities in trust, and collect and pay over the income thereof during the term of my natural life, and at my death to pay over the principal thereof as directed in my will, and simultaneously therewith and as a part of the same transaction I delivered to the said trust company in writing a direction that two-thirds of the income from said trust estate be paid over to me and the remaining one-third of said income be paid to said Katherine F. Bailey, now Katherine F. Parker, and I also at the same time duly executed in writing my will, wherein it was provided that upon my death the entire principal of my estate should be paid to said Katherine F. Bailey, now Katherine F. Parker, for her own absolute use forever; and

"Whereas, the said Katherine F. Bailey did on her part keep and perform her promise of marriage; and

"Whereas I, the said Henry M. Parker, was duly legally married to the said Katherine F. Bailey in the Village of Bronxville, County of Westchester, State of New York, on the 7th day of June, 1903; and

"Whereas, it is my desire that said ante-nuptial agreement shall be fully and faithfully carried out and performed in every particular."

The said Henry M. Parker then and thereby ratified, affirmed and adopted the said antenuptial agreement and promised and agreed to and with his said wife, Katherine, that she should receive all the benefits as therein provided, and he thereby gave, granted, assigned and set over to her the true and full sum of one-third of any and all income produced by his estate during the term of his natural life, and promised and agreed that the entire principal of his said estate should belong and be paid to her upon his death for her sole and absolute use and benefit forever.

This document prepared in handwriting was sent to Mrs. Bailey, at Florence, was there copied in typewriting and was sent to Mr. Parker, who had gone to Switzerland. About two weeks later Mrs. Bailey followed him and they went together to the office of the American consul at Luzerne, and there executed the document on June 24th, 1909. The evidence is that the docu-

ment in question was delivered to Mrs. Bailey and was by her se[n]
either to Mrs. Parker or to her lawyer, Mr. Oglesby, and that M[r.]
Oglesby, within a month after its execution, delivered the origi-
nal paper to the trust company, which immediately sent a copy
thereof to Mr. Parker notifying him of its receipt and inquiring
about it. A copy was likewise sent to Mr. Wilson, a lawyer prac-
ticing in New York, who had theretofore acted as Mr. Parker's
counsel. Under this instrument Mrs. Junkin now claims the
whole of the estate left by the said Henry M. Parker.

In 1912 Mrs. Parker obtained a divorce from her husband in
St. Louis, Missouri, and some time thereafter Mr. Parker
executed another will which has been admitted to probate, in and
by which he gave all the rest, residue and remainder of his estate
to the children of his brother Richard Fay Parker, who should
be living at the time of his death, in equal shares, and appointing
Richard Fay Parker the executor thereof. Under this will
Richard Fay Parker, as executor, and his children, claim to take
the whole of the estate of the deceased. Mr. Henry M. Parker
died on March 4th, 1914, and his wife subsequently married Mr.
Junkin, whose wife she now is.

*Mr. J. Boyce Smith, Jr.,* and *Mr. Arthur Barnes* (of the New
York bar), for Katherine Junkin.

*Mr. Charles H. Hartshorne* and *Mr. William G. Wilson* (of
the New York bar), for the defendant Richard Fay Parker and
his children.

HOWELL, V. C.

The essential difference between the two instruments above
recited lies in the final destination of the fund of which Mr. and
Mrs. Parker were life tenants. The earlier document provides
for its distribution in accordance with Mr. Parker's last will and
testament, or, if he should die intestate, for its distribution
among such persons as would be entitled to receive the same
under the intestate laws of New York if he had died intestate
and a citizen and resident of that state. It is obvious that in
case it should be found that the instrument of 1903 is valid and

CASES IN CHANCERY, 1915. 357

*84 N. J. Eq.*     N. J. Title Guarantee & Trust Co. *v.* Parker.

is subsisting, the whole of the estate in question is disposed of thereby, and that in that case there is nothing left for the second instrument to operate on. It therefore becomes necessary at the outset to determine upon the validity of the earlier instrument. If that is irrevocable, as by its terms it purports to be, and is still in force, then and in such case the distribution of the fund must be in accordance with its provisions.

The general rule is that a completed trust, without reservation of power of revocation, can only be revoked by consent of all the *cestuis;* and that even a voluntary trust for the benefit wholly or partly of some person or persons other than the grantor if once perfectly created and the relation of trustee and *cestui que trust* is once established, will be enforced, though the settlor has destroyed the deed or has attempted to revoke it by making a second voluntary settlement of the same property, or otherwise, or if the estate by some accident afterwards becomes revested in the settlor. *Perry Trusts* § *104.* This is the undoubted rule in New Jersey. *Isham* v. *Delaware, Lackawanna and Western Railroad Co., 11 N. J. Eq. 227.* There Thomas G. Trumbull conveyed land to his father, John M. Trumbull, in trust, to be leased until April 1st, 1840, the rents being payable to Thomas's two sisters, and after that date to be sold for the highest price they would bring, the proceeds to be invested, the interest paid to said sisters during life, and to their children after death, until the youngest child should be twenty-one, and then the principal to be paid to the said children in equal parts *per capita.* In 1836 the two sisters joined with the trustee, their father, in reconveying the lands to the original grantor. It was held that the conveyance did not transfer the legal title to the original grantor. In *Gulick* v. *Gulick, 39 N. J. Eq. 401,* the husband conveyed lands to his wife, she to hold the same in trust for his benefit during his lifetime, and at his death to sell the same and divide the proceeds between his widow, if living, and their children or grandchildren. It was held that this was a trust which must be maintained inviolate, and that the husband and wife could not substitute another trust in relation to the same lands in such a manner as to affect the interests of the children and grandchildren. The next case in point of time is *Pillot* v. *Landon,* in the court of

errors and appeals, in *46 N. J. Eq. 310*, which points indirectly at the same result, but does not directly and positively decide the point, because it was unnecessary to a decision of the appeal. This was followed by *Taylor* v. *Draper, 71 N. J. Eq. 309*, where Chancellor Magie uses the following words: "The right acquired by children under a declaration of trust by a father made in their favor for such a consideration differs in no respect from that which would result in a deed to them; when a voluntary settlement has been completely executed with no power of reservation reserved, it was held, in the court of errors and appeals, that it could not be annulled except with the consent of all the *cestuis que trust*. In the case of *Crue* v. *Caldwell, 52 N. J. Law 215*, Chancellor Magie, speaking for the court of errors and appeals, says: "The settlement was completely executed; it differs in form only from a settlement by conveyance expressly in trust, without power of revocation reserved, which when once perfectly created cannot be annulled without the consent of all the *cestuis que trust*. Unless the entire settlement can be successfully assailed in equity, and there set aside as the product of fraud, undue influence or mistake, the several parts of it must stand." The same rule seems to prevail in Massachusetts and New York. *Lovett* v. *Farnham, 169 Mass. 1; Sands* v. *Old Colony Trust Co., 195 Mass. 575; Mabie* v. *Bailey, 95 N. Y. 206*. And also in England. *Villers* v. *Beaumont, 1 Vern. 101; Boughton* v. *Boughton, 1 Atk. 625; Newlon* v. *Askew, 11 Beav. 145*.

When, therefore, Mr. Parker executed the original instrument he created a life estate in himself, with remainder to such persons as he should by his last will appoint, and in default of such appointment, to his heirs-at-law and next of kin under the intestate laws of the State of New York, and having executed a last will, in pursuance of the power and reservation contained in the trust deed, by which he gave the residuum of his estate, including the trust fund in question, to the children of his brother, he thereby created remaindermen who, under the provisions of the trust instrument, become entitled, under the rules of law above stated, to the capital of the fund. Having thus irrevocably disposed of the remainder, he could make no further or other disposition of it without the consent of the remaindermen whom

he had so created, and, inasmuch as such consent cannot be had, the fund goes irrevocably to them.

This view of the case renders it unnecessary for me to take up and decide the other difficult questions in the case which were so ably argued by counsel on both sides.

I will advise a decree in accordance with these views, and I will hear counsel at the time of the settlement of the decree on the question whether the fund should go in the first instance to Richard Fay Parker, executor of Henry M. Parker's will, or whether it should go directly to his two children as devisees.