An appeal is prosecuted by John L. Kuser, Jr., and Walter G.Kuser, executors of the estate of John L. Kuser, deceased, from an order of the Burlington County Orphans Court opening a decree of insolvency and permitting creditors to file exceptions to the report and account of the executors. Respondents are creditors of the estate.
In April, 1938, pursuant to R.S. 3:25-55, the executors represented to the Orphans Court that they believed the real and personal estate of their decedent to be insufficient to pay debts. June 16th, 1938, was fixed by the court as the time to make report of claims and for presentation of an inventory and evaluation of the estate. The time so fixed was, by subsequent order, extended to July 14th, 1938; the report and inventory were filed June 24th, 1938. On July 14th, 1938, no exceptions having been filed and no application having been made for additional time to file exceptions, a decree of insolvency was entered.
October 18th, 1940, more than two years and three months after the entry of the decree of insolvency, the respondent Scott Scammell gave notice of an application to open the decree of insolvency and for leave to file exceptions to the report and account of the executors. His petition was supported only by a general verification. While not required to answer a petition not properly verified by affidavits of witnesses and not presenting legal evidence by statement of fact and circumstance (Servis v.Cooper (Supreme Court), 33 N.J. Law 68; Sparks v.Fortescue (Court of Errors and Appeals), 75 N.J. Eq. 586;73 Atl. Rep. 595; 19 Am. Jur. 303 ¶ 440), the executors did so and at length; their answer was supported by detailed affidavits of the executors and of third persons having knowledge of the facts.
The application to open the decree was based solely on the ground of newly discovered evidence. The petition disclosed *Page 263 
that such evidence related to a trust established in 1914 and known as John L. and Mary Dunn Kuser trust fund, insurance upon the life of decedent, and payment of life insurance premiums by decedent from his own funds and from trust funds. This evidence, it was stated, was discovered between August 9th, 1939, and August 23d 1940, by examination of a copy of the declaration of trust furnished petitioner by the executors and from their answer and answers to interrogatories made in a Chancery suit. The petition stated only that the information so obtained "could not with due diligence" have been "discovered earlier."
The fact that there was a John L. and Mary Dunn Kuser trust fund in existence had been disclosed by the report of the executors filed in the Orphans Court. The executors were also the trustees. The petitioner, although given notice of the application to have the estate declared insolvent, filed no exception to any of the claims listed in the statement filed by the executors and made no objection to the account of assets; he made no application for discovery nor did he ask that he be permitted to examine the executors on oath as to assets of the estate or claims filed. In August, 1940, petitioner had instituted a suit in the Court of Chancery under R.S. 17:34-28
alleging that, in fraud of creditors, certain premiums on policies of life insurance on the life of decedent had been paid by decedent at a time when he was insolvent. The allegation was denied by answer of the executors and that answer (made a part of the transcript on this appeal) stated that certain insurance policies on the life of decedent were part of the assets of the trust fund and that John L. Kuser, Jr., and Walter G. Kuser, the sons of decedent, were from the time it was created, beneficiaries. The answer also stated that premiums had been paid out of funds of the trust upon some of these policies from 1927 to 1931 and upon others from 1927 to 1937; that the sons of decedent had a right to retain all of the proceeds of such life insurance policies as the named beneficiaries, and by reason of a constructive trust and a lien upon the policies and proceeds. After the answer was filed interrogatories were served and *Page 264 
the defendants furnished further particulars. The suit in which these proceedings were had has not been brought on for final hearing.
In the petition the report of claims and the account of assets were questioned. For convenience, petitioner's questions may be grouped and considered: with respect to: 1, the claim of John L. Kuser, Jr., and Walter G. Kuser, as trustees of the trust fund, in the amount of $449,372.25; 2, the claims of John L. Kuser, Jr., and Walter G. Kuser, individually, for securities loaned by them to decedent and pledged by him on personal loans at banking institutions; 3, claims stated as those on which decedent was secondarily liable; 4, failure to include assets of the trust as assets of the estate; 5, the statement that decedent owned a one-third undivided interest in the real estate listed when, it is claimed, complete ownership was in decedent.
The order of the Orphans Court opening the decree of insolvency was made September 10th, 1941. It provided that the decree entered July 14th, 1928, "be opened to the extent of permitting petitioner and said creditors to file exceptions to said report and account," and that, nothing contained in the order "shall be deemed to effect in any way any title to property acquired on sales by the said executors, subsequent and pursuant to the said decree." In the opinion of the Orphans Court it is stated that petitioner rested his application to open the decree of insolvency on the claim of "newly discovered evidence as set forth in the petition," and that, "after" obtaining the information set forth in his petition petitioner acted with diligence; that the claims made "could not have been discovered by the petitioner, prior to the making of the decree and are such that might change the status of the estate, if it can be shown that the trust fund really belonged to John L. Kuser, individually."
"Our probate practice is essentially equitable in character, and under that practice, interlocutory orders are appealable."In re Kellner (Court Errors and Appeals), 121 N.J. Eq. 243;189 Atl. Rep. 91.
The right of creditors to file exceptions to the account of an executor in a proceeding to have an estate declared insolvent *Page 265 
is governed by R.S. 3:25-59 et seq. Exceptions must be filed on or before the day specified for presenting the report, or within such additional time as the court, on application, may allow. An account to which no exception has been filed "shall be allowed as true and a claim not excepted to shall be deemed as justly due." When an exception is taken the Orphans Court must hear proofs and make such decree and determination with respect thereto as may be just and lawful. An appeal may be taken from the decree to the Ordinary; however, such appeal shall be taken "within 20 days after a decree is rendered, but not after."
Counsel have not, nor have I found any reported decision in this state defining the power of the Orphans Court to open a decree of estate insolvency, on the ground of newly discovered evidence, after the time limited for an appeal has expired. The Orphans Court partakes of the powers of a chancery and prerogative jurisdiction. Pyatt v. Pyatt (Court of Errorsand Appeals), 46 N.J. Eq. 285; 18 Atl. Rep. 1048. Resort may be had, therefore, to equitable principles and precedents.
The fundamental law on the subject of opening decrees formally enrolled is Lord Bacon's First Ordinance: "No decree shall be reversed, altered or explained, being once under the great seal, but upon a bill of review; and no bill of review shall be admitted except it contain either error in law appearing in the body of the decree, without further examination of matters in fact, or some new matter which hath risen in time after the decree, and not any new proof which might have been used when the decree was made; nevertheless, upon new matter that is come to light after decree made, and could not possibly have been used at the time when the decree passed, a bill of review may be grounded, by the special license of the court, and not otherwise." Beames Ord. 1. Chief Baron Gilbert, in his ForumRomanum, compares a bill of review to an appeal from a prince who has pronounced a definite sentence of the civil or canon law, uninformed, to the prince, better informed. For. Rom. 183. The modern and approved practice in New *Page 266 
Jersey is to move to open a decree by petition and on order to show cause. Watkinson v. Watkinson (Court of Errors andAppeals), 68 N.J. Eq. 632; 60 Atl. Rep. 931; Sparks v.Fortescue, supra; Morris v. Glaser, 106 N.J. Eq. 585;151 Atl. Rep. 766; affirmed, 110 N.J. Eq. 661; 160 Atl. Rep. 578.
In our simplification of the procedure necessary to obtain review of a decree we have not lost sight of the sound reasoning which prompted the formulation and adoption of Lord Bacon's rule, nor have we relaxed the strict requirements of that rule, prerequisite to entertainment of an application based upon alleged newly-discovered evidence. In Miller v. McCutcheon,117 N.J. Eq. 123 (at p. 130); 175 Atl. Rep. 155, Chief-Justice Brogan, for our Court of Errors and Appeals, declared: "It is sound jurisprudence and public policy as well that there should be finality to judgments of courts of competent jurisdiction which parties let go unchallenged, by failing to exercise their right of appeal." And: "It should also be observed that the final judgments of our courts would be seriously jeopardized and property rights stand on very insecure foundations if rehearings and bills of review were entertained to vacate final decrees, when the time to appeal has passed, and others have acquired vested rights, save in the well recognized instances herein mentioned." Citing Watkinson v. Watkinson,supra, the Chief-Justice pointed out that a bill or petition of review will not lie after the time for appeal has expired unless it can be brought "strictly" within the exception of newly discovered evidence or some special equity that would give the court the discretionary power to make the order.
Vice-Chancellor Van Fleet, in Dringer v. Receiver of ErieRailway, 42 N.J. Eq. 573; 8 Atl. Rep. 811, commenting upon the importance of permanence in judgments of courts, declared that even if a judgment rests on perjured testimony or on a forged instrument, yet if the defendant has had an opportunity given to him by the law to show that the testimony was false or the instrument was forged, he stands irretrievably concluded by the judgment, unless he can procure *Page 267 
it to be reversed by a direct appellate proceeding. In Tomkins
v. Tomkins, 11 N.J. Eq. 512, Chancellor Williamson declared that in a case where a judgment has been obtained in the absence of a party, and upon a hearing entirely ex parte, a court of equity will still not try the merits of the case over again, where the merits were properly established by law.
Lord Eldon, in Young v. Keighly, 16 Ves. 348; 33 EnglishReprint 1015, reluctantly dismissed a petition for leave to file a bill of review, saying: "This is an extremely important question. The evidence, the discovery of which is supposed to form a ground for this application, is very material; and I am persuaded, that by refusing the application I decide against the plaintiff in a case, in which he might, perhaps with confidence, have contended, that upon the evidence he was entitled to the whole money. On the other hand, it is most incumbent on the court to take care that the same subject shall not be put in a course of repeated litigation; and that, with a view to the termination of suit, the necessity of using reasonably active diligence in the first instance should be imposed upon parties. The court must not therefore be induced by any persuasion as to the fact, that the plaintiff had originally a demand, which he could clearly have sustained, to break down rules, established to prevent general mischief at the expense even of particular injury." In the present case appellants suggest that the opinion of the Orphans Court indicates its action was taken on a misconceived impression that some particular injury might otherwise result. This is indicated, they say, in the statement of the court: "if it were not for the debts owing to the family, this estate might be solvent."
Vice-Chancellor Van Fleet, in Traphagen v. Voorhees, 45 N.J. Eq. 41; 16 Atl. Rep. 198, declared that he who would open a decree must carry the burden of demonstrating to the court, clearly and plainly, that evidence has been newly discovered, that such evidence is competent, is of a highly weighty character and, because of the nature, situation or condition of that evidence, it was not possible for the applicant, *Page 268 
by the use of reasonable diligence, to have discovered it in time to produce it in the proceedings prior to the entry of the decree. Also, that his demonstration to the court must be of facts or circumstances, to the end that the court may, for itself, judge whether or not reasonable diligence has been exercised. The Vice-Chancellor quoted Lord Eldon, in Young v.Keighly, supra: "`The question always is, in cases of this kind, not what the complainant knew, but what, using reasonable diligence, he might have known.'" The Vice-Chancellor also quoted Lord Kingsdown, in Hosking v. Terry, 8 Jur. (N.S.) 975:
"`The party who applies for permission to file a bill of review, on the ground of having discovered new evidence, must show that the matter so discovered is of such a character that if it had been brought forward in the suit it might probably have altered the judgment.'" In Norcross v. 1016 Fifth Avenue Co., Inc.,126 N.J. Eq. 625; 11 Atl. Rep. 2d 54, our Court of Errors and Appeals said: "It is well settled that it is necessary in order to obtain relief of this kind to establish not only newly discovered evidence but that it is competent, material to the issue, likely to change the result and that by due diligence it was not ascertainable at the time of trial." Compliance with these rules has been strictly required by our courts of law and equity. Cases heretofore cited: Perkins v. Partridge (Courtof Chancery), 30 N.J. Eq. 559; St. George Lithuania SickBenefit Society v. Society of St. Urzule (Court ofChancery), 102 N.J. Eq. 512; 141 Atl. Rep. 679; Better PlanBuilding and Loan v. Forman (Court of Chancery), 124 N.J. Eq. 561; 3 Atl. Rep. 2d 453; Sheppard v. Sheppard, (Supreme Court), 10 N.J. Law 250; Mechanics Fire InsuranceCo. v. Nichols (Supreme Court), 16 N.J. Law 410; Servis v.Cooper, supra; Clawans v. Hahne (Supreme Court),123 N.J. Law 345; 6 Atl. Rep. 2d 698; Reid v. North Park and DoddTrust Co. (Porter, S.C.C.), 10 N.J. Mis. R. 469;159 Atl. Rep. 687.
"The petition (to reopen a decree) must state the facts clearly and distinctly and be supported by the affidavits of witnesses so as to enable the court to determine whether the *Page 269 
newly discovered evidence when produced will be of such character as will make it controlling in the cause." 19 Am. Jur. 303 ¶440. "Facts newly discovered ought to be laid before the court in the shape of legal evidence, and not hearsay." Service v.Cooper, supra. In Watkinson v. Watkinson, supra, the Court of Errors and Appeals stated the usual practice to be to make application by petition, "supported by affidavit that the evidence is not only new, but could not have been discovered by reasonable diligence before the hearing." The affidavit of petitioner in the present case merely said: "the matters and things therein [in the petition] contained are true to the best of his knowledge and belief." This was not proof of anything. Affidavits on information and belief, without giving the source of the information or the grounds of belief, are mere hearsay and incompetent as evidence. Union County Savings Bank v.Kolpenitsky (Court of Errors and Appeals), 125 N.J. Eq. 125;4 Atl. Rep. 2d 413; Hand v. Nolan, 1 N.J. Mis. R. 428;136 Atl. Rep. 430; Sheppard v. Sheppard, supra.
With respect to claims 2, 3, 4 and 5, claims of John L. Kuser, Jr., and Walter G. Kuser, individually, for securities deposited with various banks as security for loans made to decedent, no allegations were made in the petition of newly discovered evidence. Also, with reference to these claims, the petition speaks in the alternative. Proof of grounds in the alternative is generally held to be insufficient. 1 Am. Jur. 952 ¶ 25.
The petitioner did not "establish" before the Orphans Court "by a statement of facts and circumstances" that he could not have discovered the new matter by the use of reasonable diligence in time to make use of it on the final hearing. It is true that he states such to be the fact, but his statement in that regard is merely a conclusion, and a conclusion is not evidence.Traphagen v. Voorhees, supra. "While petitioner claims the facts alleged were only `recently' learned, it is not shown or even claimed that they could not have been `known' by the exercise of reasonable diligence." Cameron v. Penn Mutual LifeInsurance Co., 116 N.J. Eq. 311; 173 Atl. Rep. 344. *Page 270 
Not only did the petitioner fail to prove that he could not have discovered the "new evidence" "by the exercise of reasonable diligence" (and the burden of proof is on him — Traphagen v.Voorhees), but the facts disclosed indicate the contrary. The petition states that in August, 1940, petitioner learned three things as a result of the Chancery suit: Details of the declaration of trust from the copy furnished him; that decedent paid certain premiums on policies belonging to the trust and that other premiums were paid from the trust fund; that individual debts were paid by John L. Kuser, Jr., and Walter G. Kuser out of the proceeds of insurance policies, which, it is alleged, were trust funds. Were these facts which could not have been discovered by the creditor before the decree was made by the use of reasonable diligence? The fact that there was a John L. and Mary Dunn Kuser trust fund in existence was disclosed by the report of the executors filed in the Orphans Court; the answer in the Chancery suit informed petitioner that certain policies became part of the assets of the trust fund; the terms of the trust he learned by asking for and receiving a copy of the trust declaration. He could have followed the same course in the Orphans Court and obtained the same information; it is vested with the power to compel discovery as fully as is equity.Clayton v. Asbury Park and Ocean Grove Bank, 115 N.J. Eq. 480;171 Atl. Rep. 502; Hill v. Hill (Prerogative Court),79 N.J. Eq. 521; 82 Atl. Rep. 338.
The executors filing the report and account were also the trustees. It did not appear by the petition that the creditor had even inquired of them as to the terms of the trust. The report had disclosed that the claim arising out of the trust matter was for $449,372.25. By filing an exception, the creditor could have examined the executors-trustees, and could have learned every detail as to the claim, the nature of the trust and what had happened to trust assets. Whether in the course of that investigation he would have found out about the premiums paid is beside the point. The policies were payable to specific beneficiaries. The affidavit of Walter G. Kuser filed in answer to the petition discloses that the *Page 271 
petitioner, in a letter, informed the son of decedent that he knew, prior to the death of decedent, of a large amount of insurance on his life. Petitioner did nothing with respect to insurance after the death of decedent until he instituted the suit in Chancery.
The Court of Chancery has no power, nor has the Orphans Court, whether by bill or petition of review, to open an order or decree after the time for appeal has expired, except for error of law on the face of the order or decree, fraud, or new or newly discovered evidence. Nash v. Leiderman, 103 N.J. Eq. 287;143 Atl. Rep. 349; McKenzie v. Standard Bleachery Co., 109 N.J. Eq. 429; 157 Atl. Rep. 845; In re Realty Title Insurance Co.,126 N.J. Eq. 523; 10 Atl. Rep. 2d 264; Fidelity Union TrustCo. v. North Jersey Poultry Co. (Court of Errors andAppeals), 123 N.J. Eq. 259; 197 Atl. Rep. 65. It has been said (and sometimes without explanation) that the Court of Chancery has discretion to open its orders or decrees. The court may exercise its "sound discretion," in the case of newly discovered evidence, only after facts and circumstances have been proven from which the court may find that the requirements of Lord Bacon's rule, as presently enforced, have been "strictly" met.
In Miller v. McCutcheon (Court of Errors and Appeals),117 N.J. Eq. 123; 175 Atl. Rep. 155, Chief-Justice Brogan, speaking for the court, said:
"A bill of review (and, as has been said, that is what this proceeding essentially was) will not lie after the time for appeal has expired unless it can be brought strictly within the exception of newly discovered evidence or some special equity that would give the court the discretionary power to make the order. Watkinson v. Watkinson, supra. Neither of these elements exists in this case.
"As to time limitations in this class of cases, while there is no express statutory limitation as to the filing of bills of review, the limitation of right of appeal governs except in cases of new or newly discovered matter."
The ruling of the Court of Errors and Appeals, in Miller v.McCutcheon, was that an interlocutory order made by a *Page 272 
Vice-Ordinary opening a final decree from which no appeal had been taken and which had not otherwise been challenged, would be reversed with direction to the court below to dismiss the petition for a rehearing.
In Nash v. Leiderman, 103 N.J. Eq. 287; 143 Atl. Rep. 349,
an order had been made in the Court of Chancery authorizing the transfer of a lien on a certain property to the proceeds, and fixing the order of priority therein. Two years later an application was made by a receiver for an order modifying that order. The application was granted and the order modified; an appeal was taken. The Court of Errors and Appeals said: "If this be within the province of the Court of Chancery then there is no finality to any order which the court can make, for if an order can be made modifying an order made two years and three months prior thereto an order of modification could as well be made ten or twenty years subsequent to the making of the original order. If this be the law the right accorded a party by a former order would never be secure. * * * We do not think the power exercised by the Court of Chancery in modifying the order of November 4th, 1925, is vested in said court."
The creditor who applied to open the decree of insolvency, had notice of the application to declare the estate insolvent and that a report and account would be presented by the executors. He chose not to question the proceedings, or the account when filed. He permitted his time for appeal from the order of insolvency to expire without action taken. His laches and negligence in this respect should have been a bar to any opening of the decree.
Another insufficiency in the petition is obvious. The evidence claimed to be newly discovered was not shown to be of such a weighty character as should persuade a court that a different decree ought to be entered, or to establish that the result attained by the decree was wrong. General statements were made in the petition suggesting doubt as to the accuracy of claims filed, but no relevant facts were proven. I am permitted, on this appeal, "to consider as well questions of fact *Page 273 
as of law involved in the action of the Orphans Court." In reMorris' Estate, 65 N.J. Eq. 699; 56 Atl. Rep. 161. There was before the Orphans Court an answer verified in detail by affidavits of the executors and of other persons who had knowledge of the facts and circumstances. With respect to the claim of $449,372.25, it is shown by these affidavits that the trust was established in 1914 and reaffirmed in 1928; $300,000 worth of bonds were included as a part of the trust assets; about November 1st, 1931, decedent, the creator of the trust and its trustee, withdrew these bonds without the knowledge of the beneficiaries and substituted his promissory note dated November 2d 1931, for $300,000, payable to himself as trustee. Cash loans represented the remainder of this large claim. The affidavits disclose that these loans were made from the trust to the decedent with the consent of his sons, the beneficiaries, upon an agreement and understanding that the decedent was to repay the trust; that decedent gave certain notes or writings acknowledging his indebtedness or his promise to return the same to the trust; that the trust was created and that it existed as an entity separate and apart from its creator, the decedent. These proofs were evidence (and the only actual evidence) before the Orphans Court; they established the fact that a valid and irrevocable trust had been created. If the trust was valid and irrevocable what was done by the trustee with the assets of the trust could not affect the rights of the beneficiaries. A trust completely created, containing no power of revocation or modification, may not be revoked by its creator without the consent of the beneficiaries. Gulick v. Gulick (Court ofChancery), 39 N.J. Eq. 401; New Jersey Title Guarantee andTrust Co. v. Parker (Court of Chancery), 84 N.J. Eq. 351;93 Atl. Rep. 196; Isham v. Delaware, c., Railroad Co. (Courtof Chancery), 11 N.J. Eq. 227; Hamilton Trust Co. v. Bamford
(Court of Chancery), 102 N.J. Eq. 454; 141 Atl. Rep. 267;
affirmed on opinion below, 105 N.J. Eq. 249; 147 Atl. Rep. 909.
The statute, R.S. 25:2-1, is inapplicable; this is not a trust for the use of the person making the same. *Page 274 
Petitioner's suggestions that the trust was destroyed because decedent used $449,000 worth of the trust assets for his own benefit, that of $78,000 worth of premiums paid on life insurance policies owned by the trust, decedent paid $2,400 worth from his own funds, and that decedent had certain dividends on such insurance policies made payable to himself while other dividends were made payable to the trust, if in the form of evidence, would not prove the point attempted to be made. Decedent could not legally disregard the terms of the trust to the prejudice of the beneficiaries. However, looking at the acts themselves, they would not have the effect suggested. If they did, every time a trustee mingled trust funds with his own, the trust would be extinguished. That could not be. Nor, could the trust have been dissolved by agreement of decedent and of his two sons, the primary beneficiaries. The trust provides for payment of income to the sons during their joint lives and, upon the death of one, that one-half of the principal and of accrued interest is to go to such persons as may be named in the will of the one dying, or, if there is no will, to the next of kin under the intestacy laws in force at the death; the remaining one-half to go to the survivor, absolutely. The ultimate beneficiaries of the trust could not be known until the death of one of the sons. So long as it remains uncertain who are the parties in interest, the trust can not be terminated. Martling v. Martling (Court of Errorsand Appeals), 55 N.J. Eq. 771; 39 Atl. Rep. 203; Godfrey v.Roberts (Court of Chancery), 65 N.J. Eq. 323;55 Atl. Rep. 353; Martin v. Martin (Court of Chancery), 106 N.J. Eq. 258; 150 Atl. Rep. 338; 65 C.J. 356. Assets substituted for trust assets belong to the trust. Janes v. Falk (Court ofErrors and Appeals), 50 N.J. Eq. 468; 26 Atl. Rep. 138;Jeffray v. Towar (Court of Chancery), 63 N.J. Eq. 530;53 Atl. Rep. 182; China Fire Insurance Co. v. David, 50 Fed. Rep.
2d 389; certiorari denied, 284 U.S. 658.
Under no possible view could the proceeds of the life insurance policies be said to belong to the estate of decedent. Specific benficiaries were named and the rights of those *Page 275 
beneficiaries were entirely separate and distinct from the rights of the insured. Bose v. Meury (Court of Chancery),112 N.J. Eq. 62; 163 Atl. Rep. 276; Anderson v. Broad StreetNational Bank (Court of Chancery), 90 N.J. Eq. 78;105 Atl. Rep. 599. The Orphans Court apparently confused rights growing out of ownership of policies with rights of beneficiaries. It found that "these policies on his [the decedent's] life, the premiums of which were paid out of the trust fund, were not assets of the estate but were made out and paid to the two executors of this estate as individuals." If there was no trust the proceeds of these policies belonged not to the estate but to the named beneficiaries; if there was a valid trust and the trust was entitled to the proceeds, the estate could not benefit.
Another assertion of the petition, not substantiated, relates to claims of the First Mechanics National Bank. Two notes were involved, one made by each son of decedent; decedent was endorser on both. At the time the report was filed by the executors these claims had not been paid and were valid claims against the estate of the endorser. The report made it clear that the claims represented only contingent liabilities. These are the claims unquestionably referred to by the Orphans Court as "debts owing to the family," but for which "this estate might be solvent."
The Orphans Court by its order permitted the decree to be opened to the extent of permitting exceptions to be filed generally to the report and account. Petitioner questioned only eight out of twenty-five claims. Nothing was said in the opinion of the court below justifying the opening of the decree as to the other claims or as to the account of assets. Under the statute dealing with the opening of accounts, upon proof of fraud or mistake, after they have been settled, the account is opened only in respect to particular items connected with the fraud or mistake. In re Schlemm's Estate (Prerogative Court),130 N.J. Eq. 295; 22 Atl. Rep. 2d 364; Trimmer's Executor v.Adams (Prerogative Court), 18 N.J. Eq. 505.
In the petition, in addition to the suggestions made and doubts raised as to eight claims, it was asserted that the *Page 276 
account of assets was improper because it included only an undivided one-third interest in certain real estate whereas the entire ownership of property was vested in decedent. An affidavit attached to the petition stated that a search made of the official records of Mercer County demonstrated complete ownership in decedent. Why such a search had not been made when the account was filed, petitioner did not attempt to explain. However, the amount involved is so small in comparison with total claims made against the estate that, multiplied by three, it could not possibly change the result.
Respondents argue that the statute, R.S. 3:25-59, specifically authorizes the Orphans Court to open a decree of insolvency to permit exceptions to be filed. The statute reads: "Such exceptions shall be filed on or before the day specified for presenting the report, or within such time as the court onapplication may allow and an account to which no exception is so filed shall be allowed as true and a claim not excepted to shall be deemed as justly due." (Italics mine.) These words must be read in the light of principles guiding courts generally in matters of practice. The rule is succinctly stated in 59 C.J.1130: "Procedural statutes should be given a construction, if possible, which will preserve the essentials of harmony and consistency in the judicial system, and the established practice under a statute should not be changed except by the clearly expressed will of the law-makers." Henavie v. New York CentralRailroad Co., 154 N.Y. 278; 48 N.E. Rep. 525. The power conferred by R.S. 3:25-59, it seems to me, is nothing more than that which is frequently conferred upon courts by rules or statutes to extend the time within which pleadings may be filed prior to entry of a judgment or decree. To allow the filing of exceptions, which are in the nature of pleadings and result in a joinder of an issue, after an adjudication made and for any reason that might appeal to a particular judge, would, it seems to me, be contrary to early and recognized rules of procedure. That such was not intended by the legislature becomes clear upon a reading of the entire statute. Section *Page 277 3:25-62 provides for the entry of the decree of insolvency, if it appears to the court, upon consideration of the claims of creditors and the amount of real and personal estate and the value thereof, that the same is insufficient to pay the debts, and implies, necessarily, that exceptions to claims must be disposed of before the decree can be made. The decisions inKing v. Rockhill, 41 N.J. Eq. 273, and In re Estate ofYoung, 30 N.J.L.J. 9, relied upon by respondents in support of their contention, do not, I think, support it. In King v.Rockhill, the court expressly stated that the decision was made "without regard to the questions thus raised." It should also be noted that the Orphans Court dismissed exceptions without hearing them after it had vacated an order granting further time because improvidently made. The Young Case was a decision of the Warren County Orphans Court and was based on the case of King v.Rockhill.
Counsel for respondents have argued that by allowing exceptions to be filed the Orphans Court did not open the decree of insolvency (notwithstanding that the order was so worded) and that there is nothing which constitutes an order of the court and an adjudication that the account of assets be allowed as true and the claims as justly due. These contentions are contrary to the authorities. Smith v. Crater (Court of Errors and Appeals),43 N.J. Eq. 636; 12 Atl. Rep. 530; Feick v. Hill Bread Co.
(Court of Errors and Appeals), 89 N.J. Eq. 189;140 Atl. Rep. 96; In re Schlemm's Estate, supra. The decisions dealing directly with the question treat a default decree no more leniently than a contested decree — perhaps with less indulgence.Cameron v. Penn Mutual Life Insurance Co., 116 N.J. Eq. 311;173 Atl. Rep. 344; Better Plan Building and Loan Association v.Forman, supra. The Court of Errors and Appeals, in In reHazeltine's Estate, 121 N.J. Eq. 49; 187 Atl. Rep. 177, declared that an order opening an account, without legal proof, will be set aside.
Another point should be discussed. In the opinion inWatkinson v. Watkinson, supra, appears the following: "There is, however, another consideration why the laches of *Page 278 
the respondent should not be overlooked, and that is, that on the strength of the decree in the Court of Chancery the appellant has married again, so that other rights have now intervened, and anentirely innocent party will suffer should the decree berevoked." (Italics mine.) In the present case the affidavits filed by the appellants with the Orphans Court disclose that, since entry of the decree, and pursuant thereto, the executors have sold three parcels of real estate of their decedent; improvements have been made by one of the purchasers; another purchaser has resold the parcel he purchased; and, the executors, with court approval, also sold a deed to secure debt, or mortgage, on property in the State of Georgia for approximately $30,000. The jurisdiction of the Orphans Court to enter a decree of estate insolvency rests upon statute; the title of purchasers at sales made pursuant to such a decree rests upon the decree. There is nothing in the statute respecting insolvent estates which gives the Orphans Court jurisdiction or power to preserve title when there is no decree, and sales made pursuant to an insolvency order of the Orphans Court are judicial sales and may not be considered sales under any power in decedent's will.Podesta v. Binns (Court of Chancery), 69 N.J. Eq. 387;60 Atl. Rep. 815; Brown v. Wencher (Court of Chancery),94 N.J. Eq. 710; 120 Atl. Rep. 637; Stryker v. Vanderbilt
(Supreme Court), 27 N.J. Law 68; Hohokus v. Erie RailroadCo. (Supreme Court), 65 N.J. Law 353; 47 Atl. Rep. 566; In reGodfrey's Estate (Prerogative Court), 72 N.J. Eq. 351;65 Atl. Rep. 202, and see 24 C.J. 163 and 182.
The petition to open the decree was not properly verified and such facts and circumstances as were therein set forth should not have been given weight as evidence; petitioner neglected to seek the information he characterizes as newly discovered evidence in the Orphans Court, failed to file any exceptions to the report or account and permitted his time to appeal from the decree to expire; petitioner failed to prove that he could not have discovered the evidence he offered as newly discovered, in time to have made use of it before the decree of insolvency was entered and he did not present *Page 279 
to the court facts and circumstances sufficient to justify a finding that he had exercised due diligence before the decree was made; and, the evidence asserted to have been newly discovered was not shown by the petitioner to be such as would probably change the result effected by the decree. For these and the other reasons I have stated I must advise that the order of the Orphans Court opening the decree of insolvency be reversed.